## DEERY *v.* CRAY.

1. A deed which referred to a plat of the land for one of the lines of the boundary, may be read in evidence to the jury without the production of the plat, subject to an identification of such line by competent evidence during the progress of the trial.
2. A deed which refers to such a plat for one line, or which authorizes the line to be run by a certain person according to such a plat, is not void for uncertainty on its face.
3. In case of such a deed made a great many years ago, though the plat is not produced, it is competent to show by other proof, written or parol, or both, that such a line existed and where it was located.
4. This may be shown by long possession on each side of the line evidenced by a fence, by the parol declarations of the parties holding under the deed on each side of the line, or by any facts which clearly establish the existence of such a line and its location.
5. The erroneous instruction of the court in regard to the effect of a deed of mortgage on the plaintiff's title, is no ground for reversal, when this

court can see that the plaintiff had no title on which the jury could have found in his favor.

ERROR to the Circuit Court for the District of Maryland.*

Eliza Deery brought ejectment October 12, 1863, in the court just mentioned, to recover from one Cray an undivided fifth part of the southern half of Kent Fort Manor, an

ancient manor in Kent County, Maryland. This manor was an irregularly shaped piece of land, whose longest direction is mainly north and south, surrounded entirely by water except on the northern line, which crosses a rather narrow

---

* This case had been under the consideration of the court once before on error to the same court as now (5th Wallace, 795). It was then sent back for a second trial. The present writ of error was directed to the rulings of the court on that new trial.

neck of land. The diagram illustrates roughly, and without various indentations from the waters which run up into the body of the manor, its outline forms and will make obvious the fact—a fact necessarily belonging to the division of a piece of land thus shaped—that, if the manor were divided into two nearly equal parts by a line running from the western water-boundary to the eastern, all of the southern half would be surrounded by water, except the short line separating it on the north from the other half.

The plaintiff having established on the trial a title to the whole of the manor in Samuel Lloyd Chew, one of her ancestors, further traced the title by descent to Lowman Chew, who died in 1862 childless and intestate, leaving five heirs of whom she is one. The defendants, on the other hand, introduced conveyances from Samuel A. Chew, the father of Lowman Chew, for a large part of the northern half of the manor, and, it was conceded that the plaintiff had no controversy with the tenant in possession of the remainder of the northern half not conveyed by Samuel A. Chew.

The controversy was thus limited to the southern half, of which, as already said, the plaintiff claimed an undivided fifth part, and to which she had shown a *prima facie* title.

To defeat this the defendants introduced a deed dated October 22d, 1787, from the said Samuel Lloyd Chew (from whom the plaintiff derived title) to his mother, Elizabeth Chew, which was asserted to be a conveyance of the fee of this south half of the manor.

The description of this land in this deed was in these words:

"All that moiety or half part of a tract of land called Kent Fort Manor, lying and being in Kent Island, in Queen Anne's County, being all that part of said tract of land which lies to the southwestward of a line beginning on Northwest Creek and running an easterly course, agreeable to the plat of said land made by William Brown, of Anne Arundel County, in such manner as to comprehend one-half of the number of acres of the whole tract, the said line to be run and ascertained under the direction of John Thomas, Esquire, of Anne Arundel County."

The plaintiff—objecting to this deed that the description of the land conveyed by it was so uncertain, as to render the deed void—excepted to the introduction of it, unless the plat which the deed referred to as made by Brown was produced and its lines shown. The court, however, permitted the deed to be read, subject to the right of the plaintiff to exclude the same hereafter, if upon the closing of the testimony it should not have been legally and sufficiently applied by the defendants to the maintenance of the issue on their part.

The defendant then, in order to apply it, or in other words, show that this northern line had an existence, so as to enable one to determine what was the south half of the manor, introduced certain evidence, as follows:

A map of the Kent Fort Manor, which was admitted to be part of a record of a chancery suit in Maryland, filed in 1802, and the location on the said map of Susanna Tait's moiety, admitted to be a correct location of the share of said manor assigned in said court to Susanna Tait, as sister, and one of the heirs of Arthur Bryan, in the partition of his real estate. This map had figures and lines on it showing a division of the manor into two equal parts of $1002\frac{1}{2}$ acres each, and that the division was made by a straight line from a point on Northwest Creek, projecting far into the body of the tract, in a course a little south of east, to the eastern shore of the island.

Deeds showing conveyances of Elizabeth Chew (grantee in the deed whose admission in evidence we have already stated was objected to) to one T. M. Foreman, from Foreman to Philip Barton Key, and from Key to Arthur Bryan, of the same land, describing it either as the land on the said manor, purchased by Elizabeth Chew of her son Samuel, or as Elizabeth Chew's half part of the manor.

Proof by a witness over seventy years old that he knew Robert Tait, the husband of Susanna, and Kent Fort Manor, since he was eleven years old. That a fence then divided the north and south part of the manor, and said Tait held up to that fence. That after Samuel A. Chew, the father of

Lowman Chew, came to live on the north half of the manor, he and Robert Tait changed the location of the fence, and that both recognized it as the boundary between them. And there was other testimony showing the holding under these parties by this line from that day to this.

Upon the deed thus admitted and the evidence just mentioned, the court below charged (the plaintiff excepting) that the defendants were entitled to the verdict if they should find that during the life of Samuel Lloyd Chew, or after his son Samuel A. Chew acquired the interest in the tract, and before his death, and more than twenty years before suit brought, a division line or fence or boundary between the upper and lower moieties of the tract was established by the common consent, or with the common acquiescence of the said Samuel Lloyd, or Samuel A., and Elizabeth Chew, or those claiming under her, and that the said line, fence, or boundary was so established and recognized by and between the parties as and for the upper line of the lands intended to be conveyed to the said Elizabeth, by the said Samuel Lloyd, and had thenceforward and for more than twenty years before suit brought so continued to be, and that possession had ever since been continuously held by the parties possessing and claiming title on both sides of the line in recognition of and in conformity with said decision.

The introduction of the deed of 1787 from Samuel Lloyd Chew to Elizabeth Chew, and these instructions of the court on the effect of it and the title under it, made the principal point in the case; the plaintiff's position being that the deed ought not to have been admitted and that the charge was wrong.

And there was a minor matter. The defendants gave in evidence a deed of mortgage from the plaintiff Eliza Deery to one Scott of "all her undivided interest in a tract of land lying in Queen Anne's County, and containing six hundred acres, more or less, *being the same land and all the lands of which Lowman Chew died seised*, the said Eliza being one of the heirs of said Chew." This mortgage was executed Feb-

ruary 7th, 1863, that is to say, ten months before the institution of this suit, and contained no provision for possession by the mortgagor till default. The instrument being thus in evidence the defendant asked the court to charge, that by its execution the plaintiff had parted with her legal title to the real estate on Kent Island, of which Lowman Chew died seised prior to the institution of the suit, and could not recover; which charge the court gave, the plaintiff excepting.

Verdict and judgment having gone for the defendant, the other side brought the case here.

*Messrs. Brent and Crittenden, for the plaintiff in error:*

1. As to the principal point of the case; the admission of the deed of 1787 and the instructions given upon it. If we assume that the separating and essential line was marked on Brown's plat, and had already been run and located, leaving on its south side precisely one-half of the acres in the whole tract, and that this pre-existing line was merely to be run out and ascertained by John Thomas, so as to avoid all dispute touching its location, then the court was in error in admitting the deed before the plat of Brown, so indispensable to its location, was produced and identified, or if lost, its contents proved by secondary evidence. The defendant, while offering his paper title in evidence, is to be assumed to rely on it exclusively "*pro hac vice*," and therefore its admissibility is to be tried as if the deed were executed recently.

The Maryland authorities require this proof of all lines called for in a deed, because it is a material part of the instrument without which its legal operation cannot be determined, and they are equally conclusive against the reservation made by the court below, to the effect that the plaintiff might move "to exclude the same hereafter, if upon closing of the testimony it shall not have been legally and sufficiently applied by defendants to the maintenance of the issue on their part." Whatever they may be in other States, the land laws of Maryland are stringent and technical. The principles which we maintain are settled by the Court of

Appeals of Maryland in the cases of *Fenwick* v. *Floyd's Lessee*,* of *Thomas's Lessee* v. *Turvey*,† and especially by that of *Hammond* v. *Norris*.‡

2. In regard to the minor point, the instruction about the effect of the mortgage to Scott, the court ruled, that a legal title passed as matter of law by the execution and delivery of the deed of mortgage to all the land of which Lowman Chew died seised, and yet it did not require the jury to find the recording of the mortgage nor the identity of the land conveyed.

*Mr. S. T. Wallis, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The objection to the deed of 1787, from Samuel Lloyd Chew to his mother, Elizabeth Chew, is, that the description of the land conveyed is so uncertain as to render the deed void.

The plaintiff excepted to the introduction of this deed, unless the plat therein referred to as made by Brown was produced and its lines shown; but the court permitted the deed to be read, subject to the right of the plaintiff to exclude the same hereafter, if upon the closing of the testimony it should not have been legally and sufficiently applied by defendants to the maintenance of the issue on their part.

Now, unless the deed is so fatally defective as that no subsequent competent evidence could make it good in point of description, the court did not exceed its just discretion in permitting it to be read. In other words, if the uncertainty was a patent ambiguity, an uncertainty which inhered in the essence of the description, rendering it incapable of being applied to the subject-matter, then the deed was void absolutely, and should not have been admitted. Otherwise it was well admitted.

But this does not seem to us to be the character of the instrument. All the boundaries given are well known and easily identified, except one. This one is to separate the

---

* 1 Harris & Gill, 172.       † Ib. 437.       ‡ 2 Harris & Johnson, 130.

southwestern half of the manor from the other half. The division is to be into moieties exactly equal in quantity. Now, it is entirely clear, that if you give a surveyor the number of acres of the whole tract, and the point on the Northwest Creek where the division line is to commence, he can then determine mathematically the course, the distance, and the terminus of a straight line running an easterly direction which will divide the manor equally.

It may be conceded that if there was nothing referred to in the deed by which the commencement of this line, or any other part of it, could at the date of the deed have been fixed, that it would have presented a patent ambiguity. But if there was anything by which either the beginning or the end of the line could have been located, then the whole of it could have been located. On this point the deed seems sufficiently clear in two particulars. First, the line was to be run agreeable to the plat of land made by William Brown, of Anne Arundel County. Second, it was, with this aid, to be run under the direction of John Thomas, of said county. Now what is the meaning of this, fairly construed? It is that the grantor conveys one-half in quantity of the land. It is to be divided by a line running from the creek eastwardly, and there is a plat of this land made by William Brown, which shows this line, which is to be run out on the ground according to the plat, under the direction of John Thomas. The deed, therefore, refers perspicuously to the means which renders certain the description. "*Ambiguitas patens*," says Lord Bacon, "is that which appears to be ambiguous upon the deed or instrument: *latens* is that which seemeth certain and without ambiguity, for anything that appeareth upon the deed or instrument; but there is some collateral matter out of the deed that breedeth the ambiguity."

So here the deed on its face presented no apparent uncertainty. It is only when we come to apply it, and are unable to find or identify the plat made by Brown or the line run by Thomas, that there is any difficulty.

The cases relied on by counsel for the plaintiff to show

that the courts of Maryland have established a different doctrine, are not inconsistent with what we have said.

In *Fenwick* v. *Floyd's Lessee*, the land was described as "part of Resurrection Manor, containing 251 acres more or less." Resurrection Manor was a large tract of 4000 acres, and the sheriff levied on and sold 251 acres of it, with no other description than that just stated. Nothing else was shown by which this quantity could be located or identified, and the description was clearly a patent ambiguity on which the levy and sale was rejected as evidence.

In *Thomas's Lessee* v. *Turvey*, three levies and execution sales were rejected, the schedules of which described the land as "part of Borough Hall, containing the supposed quantity of 130 acres of land, more or less." Borough Hall was a tract of 500 acres, and there was nothing by which the location of the 130 acres could be shown, nor any evidence that it had ever been located.

In *Hammond's Lessee* v. *Norris*, the description in the deed was, "all these two parcels of land, being parts of a tract of land called Wood's Enclosure, and sold to said John Howard by Joseph Wood, one parcel containing 86 acres, the other 94 acres, as by deed duly made and recorded in Frederick County appears." The court overruled plaintiff's objection, and permitted the deed to be read in evidence, but, as it subsequently appeared that there was no such deed as that referred to on record in Frederick County, and as no other satisfactory proof was made of the location of these tracts within the larger tract of Wood's Enclosure, the court finally held that it conveyed no title.

That is just in accordance with the action of the court on this case in admitting the deed to be read in evidence, subject to the effect of it as to title, when all the evidence should be in.

This leads us next to inquire whether defendants have shown, by satisfactory and competent evidence that this northern line had an existence, so as to enable us to determine what is the south half of the manor.

Upon this point it does not seem to us there can be any doubt, for though the plat of William Brown is not produced, nor is it proved expressly that the line was ever run under the direction of Mr. Thomas, yet there is as much evidence as can possibly be expected to be produced after the lapse of eighty years, that such a line was run, and that with such slight changes as the holders of the title on each side of it made by consent and for their mutual convenience, a fence has been standing along that line ever since.

And this does not depend solely upon parol evidence. The map in the chancery suit in Maryland, filed in 1802; the deeds produced, and the proof made by the ancient witness, with the other testimony produced,* we think quite sufficient to show that the line mentioned in the deed of Samuel Lloyd Chew to his mother was run and established; that with the change made by Tate and Samuel A. Chew for convenience, it has remained the line to the present time, and that the parties claiming the north and south parts of the manor have recognized that fence for over thirty-five years as the line dividing their estates.

We add further, that, as this testimony is uncontradicted, it is conclusive against the claim set up by plaintiff of any title derived from Samuel A. Chew, and of her case.†

It is unnecessary to inquire into the effect of the mortgage given by plaintiff on her title, as we have already stated that she had none on which the jury could have found a verdict in her favor, and the error, if there was one in the instructions of the court on that subject, could work her no injury.‡

JUDGMENT AFFIRMED.

---

* See statement of the case *supra*, p. 266, for the nature of this map, the deeds, and other proof.—REP.

† Sargent *v.* Adams, 3 Gray, 72; Bertsch *v.* The Lehigh Coal Co., 4 Rawle, 139; Munroe *v.* Gates, 48 Maine, 463; Reed *v.* Proprietors, &c., 8 Howard, 289; Noonan *v.* Lee, 2 Black, 499.

‡ Ryder *v.* Wombwell, Law Reports, 4 Exchequer, 32; Giblin *v.* Mullen, Id., 2 Privy Council Appeal, 317.