# SHAPPIRIO v. GOLDBERG.

EQUITY; LACHES; CONTRACTS, RESCISSION AND REFORMATION OF;
FRAUD AND MISTAKE.

Where one in possession not only of his own lot, with its improvements but also of a small parcel of land containing a stable in the rear thereof, of which parcel he is not the owner but which is included within his own inclosure, enters into a contract to sell the lot of which he is the owner to an intending vendee, who thereupon directs the real estate broker negotiating the sale to have the deed prepared, and to attend to the whole matter of the transfer, and a deed is afterwards delivered in which the lot is correctly described, and the vendee, thinking that he has purchased all of the land inclosed, enters into possession and rents the property to the vendor, who thereupon purchases the stable lot from its owner and has it conveyed to his wife, a court of equity will not at the instance of the vendee rescind the contract of

sale or require the vendor to convey to him the stable lot, especially where it appears that the vendee after discovering his mistake remained in possession of the premises conveyed to him for several months, received the rents, and in all respects treated the property as his own.

No. 1177.   Submitted April 15, 1902.   Decided June 4, 1902.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to reform a deed of conveyance of real estate on the ground of fraud, or to rescind a contract of sale of the land embraced therein.                    *Affirmed.*

The COURT in its opinion stated the case as follows:

On the 11th day of May, 1900, George Goldberg and Minnie D. Goldberg, his wife, by written power authorized L. Richold, a real estate broker, in the city of Washington, to sell his or their property, described in the written power as Nos. 1245 and 1247, being part of lot No. 28, in square 977, fronting 34 feet on Eleventh street, southeast, by 80 feet deep to an alley, with the improvements thereon. Under this power, Richold, the broker, effected a sale of the property to one Jacob I. Shappirio, apparently on the same day that he received the power to make the sale; the price agreed to be paid being $6,000. In the contract of purchase and sale, the receipt of deposit to bind the contract is recited; and the property is described as it is in the power of sale; and in the contract it is stated that the property was improved by two two-story brick buildings, and nothing said about any other buildings or improvements. The terms of sale are stated to be, all cash; and that the property was sold as a good title, or the money to be refunded and the sale to be declared off. It was also declared as part of the terms, that the seller and his agent assumed no responsibility for cost of abstract, nor for any damage by reason of said title proving defective. That the purchaser was required and agreed to make full settlement according to terms of

sale, within thirty days from the date of the contract, or the deposit to be forfeited. All taxes were required to be paid to date of deed; and the vendor to give the usual special warranty deed; and the conveyancing to be at the cost of the purchaser. This contract of sale and purchase was signed by Richold, the broker, by Goldberg, the seller, and by Jacob I. Shappirio, the purchaser. The latter authorized and requested Richold, the agent, to order and direct the preparation of the deed, and to attend to the whole business of having the property conveyed as required by the contract. This was accordingly done under the direction and supervision of Richold, the real estate broker, after having the title examined and approved by a title company. The deed was made June 5, 1900, and it was made not to Jacob I. Shappirio, named in the contract of purchase, but to Mary Shappirio, his wife; and that deed professed to convey to the grantee therein, her heirs and assigns, the land and premises, with the improvements, easements and appurtenances thereunto belonging, described as all that part of original lot No. 28, in square No. 977, contained within the following metes and bounds, namely:

" Beginning for the same at the southeast corner of said lot and running thence north on Eleventh street thirty-four (34) feet; thence west eighty (80) feet, eight (8) inches to an alley; thence south on said alley fourteen (14) feet; thence east eighteen (18) feet; thence south twenty (20) feet, and thence east sixty-two (62) feet, eight (8) inches, to the place of beginning."

This description of the premises conveyed is in exact conformity, as to front and depth of lot, to the description of the property authorized to be sold, and which was contained in the contract of sale and purchase, signed by all the parties concerned. It appears that, at the time of the sale and conveyance of this lot, No. 28, on Eleventh street, there was at the end of that lot a piece of ground, twenty by thirty feet, part of another lot, upon which there was a shed or stable, and which had been used by the owner of lot 28 on Eleventh street, but which piece of ground so located did

not belong to the owner of lot 28. After the deed to the plaintiff Mary Shappirio of June 5, 1900 [was delivered], Minnie D. Goldberg, the wife of George Goldberg, purchased, for the sum of $250, this small piece of ground, and had it conveyed to her by deed dated 28th of September, 1900.

Some time after the deed to Mary Shappirio, of the 5th of June, 1900 [was delivered], she executed a deed of trust of the property conveyed, to secure the sum of $4,500, to two trustees, Smith and Norment, but who are not parties to the present bill, though the money has not been paid, according to the admission of the parties to this suit. Upon accepting the deed for the property, the grantee, together with her husband, entered into the control and possession of the property, and rented the same to Goldberg, the vendor, for nearly a year, and received the monthly rent therefor, and only refused to continue to rent the same to Goldberg because the latter refused to pay the amount of rent asked. Some time after Goldberg vacated the premises as tenant, the present bill was filed on May 10, 1901, by Mary Shappirio, and Jacob I. Shappirio, her husband, against Minnie D. Goldberg and George Goldberg, charging fraud and deception by George Goldberg, in respect to the extent of the property sold by him, and as to the ownership of the small piece of ground in the rear of lot 28, and upon which the shed or stable had been erected, as before stated.

It is charged in the bill, that the plaintiff, Mary Shappirio, through her husband, agreed to purchase of the defendant George Goldberg premises known as Nos. 1245 and 1247 Eleventh street, southeast, in the city of Washington; that said premises are located on part of lot No. 28, and part of lot No. 2, in square 977 of said city, and which parts of lots are described as follows:

" Beginning for the same at the southeast corner of said lot 28, and running thence north on said Eleventh street 34 feet, thence west 80 feet and 8 inches to an alley, thence south on said alley, 14 feet; thence west with the line of said alley, 12 feet, thence south 20 feet, thence east 92 feet and 8 inches, to the place of beginning; which parts

and parcels of real estate are improved with two certain stores and dwellings, together with two stables or barns fronting on the alley on the rear of said land."

It is then alleged that at the time of the sale the said Goldberg was using and occupying both of the stores and all of the appurtenances to the buildings, and the yards at the rear were all inclosed as one parcel, with no dividing fence between them: That Jacob I. Shappirio, acting as agent of his wife Mary, was told by the vendor Goldberg that the entire yard inclosed and the barns then in his use and possession, were part and parcel of said premises, and that the sale and purchase included all the land in the bill described; and that the same had been used by him for many years as part of the premises sold; and that the plaintiff Mary agreed to purchase the property as the same was pointed out and described to her husband by Goldberg for the price mentioned. That the plaintiffs having full faith in Goldberg, and in the truth of his representations, the entire transaction in relation to transferring the property was left to Richold, the agent of Goldberg. That notwithstanding the fact that Goldberg had agreed to sell said pieces or parcels of ground and premises, he only conveyed to the plaintiff Mary that part of said described land which comes within the lines of lot 28; that the deed was not examined by plaintiffs before paying for the property; and that said Goldberg, knowing that he did not own the legal title to said part of lot 2, while occupying the premises as tenant of the plaintiff Mary, with the intention of cheating and defrauding her, did, on the 28th day of September, 1900, apply to and purchase from the owner the legal title of said part of lot 2, and caused the title thereto to be conveyed to his wife Minnie D. Goldberg; that he paid for the same with money of his own, and caused the title to be conveyed to his wife as part of the scheme to defraud the plaintiff, and that Minnie Goldberg, the wife, was party to the fraud, and had really no interest in the property otherwise than to hold it for her husband, and thus to aid him in perpetrating the fraud upon the plaintiff.

Upon these and other allegations, all made in support of the charge of fraud and deception, the plaintiffs pray — 1st, that it be declared and decreed by the court that Minnie D. Goldberg hold said piece or parcel of ground, located within the lines of said lot 2, for the use of plaintiff Mary Shappirio, and that she be required to convey the same to her free and clear of all incumbrances placed thereon; 2nd, that if such relief be not allowable, that the sale to the plaintiff Mary be rescinded, and that George Goldberg be required to refund to her the full amount of purchase money paid for said property, together with all costs and charges that she may have incurred by reason of such sale, with interest thereon; and in default of so refunding the purchase money, that the property be sold under the decree of the court; and for other relief.

The defendants answered the bill, and denied all the material allegations therein, and especially all fraudulent and deceptive facts charged against them; and aver that the plaintiffs were in no way deceived or misled by the defendants or either of them; and that if they, the plaintiffs, were in any respect misled or deceived in regard to the property purchased, or the extent thereof, it was the result of their own want of care and attention to what they were buying.

There was a large mass of testimony taken, much of which was conflicting, and the greater part without relevancy to the real questions involved. The court below decreed against the plaintiffs and dismissed the bill.

*Mr. Leo Simmons* for the appellant.

*Mr. Thomas M. Fields* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

It is conceded that the small parcel of ground forming part of lot No. 2, in the rear of lot 28, both lots being in

square 977, did not in fact belong to Goldberg at the time of the sale to the plaintiff, and he, therefore, had no right to sell and dispose of it to the plaintiffs. But we, nevertheless, think it probable that the plaintiffs, or rather Jacob I. Shappirio, was really deceived and misled by appearances, as to what in fact did constitute lot 28 purchased of Goldberg. Though Goldberg may not have made any positive representations as to the extent of lot 28, it does not appear that he was required so to do by any request of Shappirio; and the latter was left free to his own investigation of the subject. The apparent relation of the yard and shed, in the rear of lot 28, to the front lot was such as was well calculated to produce the impression, from a mere inspection, that they constituted part and parcel of one entire premises. But the purchaser was bound, for his own protection, to ascertain to what the description in the contract of purchase and in the deed of conveyance did in fact apply, and what was embraced therein. That description speaks for itself, and shows plainly that it does not embrace the small parcel of ground at the rear of lot 28, and forming part of lot No. 2.

In the examination of L. Richold, a witness produced for the plaintiff, and who was the broker that made the sale, and who had the title examined and the deed prepared for the purchaser, in giving an account of an inspection of the property, prior to the sale, in company with Goldberg and Shappirio, in answer to the question,— " Did Mr. Goldberg state to you at any time, whether or not the stable at the rear in the yard of 1247, belonged to this property? A. He did not. I only asked him what was the size of the lot, and the front and in the rear, with the improvements thereon.

" Quest. Did he say it did not belong to it? A. No; he never mentioned that, either. I never gave it any idea or the least consideration. When you tell me you have so much depth to the alley, I thought he sold the whole business, and that was my idea. I thought it was all in there what was there.

" Quest. State who paid the money for the property to you, if anybody. A. Mr. Shappirio paid the money. I fixed it up in Mr. Ashford's office. Mr. Shappirio paid me $100 deposit before the deed was made.

" Quest. Now, after the money was paid, what was done about the examining of the title? What part did you take in that? A. Mr. Shappirio authorized me to order the deed, and attend to the whole business, and I did so, with no understanding that there was any trick behind it." And then, in answer to the question, " When did you first learn, if at all, that the property upon which the stable of 1247 stood, and the back yard to that house, was not included in the deed? A. About five or six months after the sale. I went there to collect the rent from Mr. Goldberg. He was complaining about the water-closet, and he told me to attend to it. It looked to me that it was only an excuse to call my attention to the yard."

Whatever may have been the impression on the mind of the purchaser in this case, as to what was embraced in lot 28, or the part thereof described in the deed of conveyance, as indicated by external appearances, the principle is established beyond question, that the reformation of a contract of purchase will not be decreed on the ground of mistake unless there be clear and unmistakable proof of *mutual mistake,* or mistake of one party induced by the *fraud, deception,* or *wrong,* of the other party. And to vitiate a contract, and especially an executed contract, upon the ground of misrepresentation and deception, the misrepresentation must relate to a material fact, constituting an inducement to the contract, of which the complaining party *had no means of knowledge,* and upon which he relied, and by which he was actually misled to his injury. As said by the Supreme Court of the United States — "A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these

means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations." *Slaughter* v. *Gerson,* 13 Wall. 379, 383.

In the case of an executed contract, where the deed has been made and accepted, and the grantee has treated and dealt with the property as his own, as in the present instance, the ground for seeking a rescission of the conveyance, or a material change therein, must be shown to be of the most imperative character, and such as the ends of justice actually demand, in order to justify a court of equity in interposing to grant relief. In such case, as has been repeatedly declared, the power of a court of equity ought not to be exercised, unless the fraud and false representations set up as the ground for relief be established beyond reasonable doubt, and the complainant has been thereby deceived and injured under circumstances which he could not by cautious diligence have controlled. *Atlantic Delaine Co.* v. *James,* 94 U. S. 207.

In the present case the plaintiffs not only had the deed before them in which the property conveyed was accurately described, but for several months after the conveyance, and even after knowledge that the small piece of ground, part of lot No. 2, was not embraced therein, they rented the premises conveyed and received the rents therefor, and in all respects treated the property as their own. This of itself concludes them, in the view of a court of equity, which does not tolerate delay in a case of this character. " Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred." *Grymes* v. *Sanders,* 93 U. S. 55, 62; *McLean* v. *Clapp,* 141 U. S. 429, 432.

The principles that govern in this class of cases are very clearly stated by the Supreme Court in the case of *Southern Development Co.* v. *Silva,* 125 U. S. 247, 250. It is there

said that in order to rescind a contract for the purchase of real estate, on the ground of fraudulent representations by the seller, it must be established by clear and decisive proof that the alleged representations were made in regard to a material fact; that they were false; that the maker of the representations knew that they were not true; that he made them in order to have them acted on by the other party; and that they were so acted upon by the other party to his damage, and in ignorance of their falsity, and with a reasonable belief that they were true. But when the purchaser of property undertakes to make investigations of his own respecting the property before concluding the contract of purchase, and the vendor does nothing to prevent his investigation from being as full as he may think proper to make it, the purchaser cannot afterwards allege that the vendor made representations respecting the subject investigated which were false. And to this may be added, that if the party complaining seeks to have the contract rescinded, or changed in a material particular, upon the ground of mistake or fraud, he *must,* upon the discovery of the facts, at once announce his purpose and adhere to it, otherwise he will be held to have waived the objection, and be bound as if no mistake or fraud had occurred.

These well settled principles would seem to be decisive of this case. The plaintiffs have failed to bring their case within the principles that would justify the court in granting them relief, in either form in which they pray for it in their bill. We think there was no error in the decree of the court below, and we must therefore affirm it; and it is so ordered.

*Decree affirmed.*