116

## HORNING v. FERGUSON.
### No. 472.

Municipal Court of Appeals for the
District of Columbia.

March 7, 1947.

Rehearing Denied April 8, 1947.

R. H. Yeatman, of Washington, D. C.,
for appellant.

George E. Sullivan, of Washington, D.
C. (Donald M. Sullivan, of Washington,
D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is an action brought by appellee,
plaintiff below, against appellant arising
out of a contract for the sale of defendant's

former residence in Kenwood, Montgomery County, Maryland. The controversy involves a narrow strip of land which defendant did not own but which plaintiff claims was represented to him as being part of the property. The trial court, sitting without a jury, awarded plaintiff damages of $2,500. Defendant appeals.

At the time of the sale to plaintiff, defendant owned a lot having a frontage of 150 feet and a depth of over 135 feet, improved by a large house landscaped in terraces and planted with trees and shrubbery. Subsequent to his original purchase of this property, defendant had contracted to purchase a strip of land 30 feet wide adjoining the west boundary of his property, and had built on the strip a lily pool and other landscaping improvements, including a flagstone walk connecting the strip with the main lot and also shrubbery which bordered the strip in such a way as to indicate to an average person that the strip was a part of defendant's lot. Defendant later obtained a release from his contract to buy the small strip, but he was permitted to retain its use together with the lily pool, landscaping and shrubbery.

In 1942 defendant, desirous of selling the property because he was on sea duty with the United States Navy and because his family was reluctant to stay in the house alone, instructed one Lebling, a real estate agent, to offer the property for sale. The agent obtained the exact dimensions and other information concerning defendant's property from the land records of Montgomery County, Maryland, and placed an advertisement in a newspaper, including a photograph of the residence.

Plaintiff, in response to the advertisement, was shown the property by the agent, who, believing his statement to be true, represented to the plaintiff by reference to some poles and the shrubbery that the 30-foot strip was included in the property offered for sale. At the same time he also informed the plaintiff of the correct measurements and acreage of defendant's property.

Relying on the agent's representations, plaintiff on September 23, 1942, entered into a contract, in Maryland, to buy the property for $33,500, making a $1,000 deposit to be held by the agent as part of a $3,000 cash payment to be paid on or before the settlement date, November 23. Defendant and his wife ratified the contract in Maryland on September 24. At the time, plaintiff had a lease running until June 1943 on his then residence, but after signing the purchase agreement he made an arrangement on October 8 with the owner of the leased premises under which his lease was cancelled effective December 1 and that property was leased to another person. In addition, prior to discovering that defendant did not own the 30-foot strip, plaintiff, with the consent of defendant, did some redecorating in the Kenwood house, which had been theretofore vacated by the defendant.

Being uncertain as to the location of the property line in the rear of the lot, plaintiff employed a surveyor, and on November 17 or 18 he learned, as a result of this survey, that the 30-foot strip was not included in the lot as described in the purchase contract. On November 18, after learning the true facts, he paid the balance of the cash payment of $3,000 to the title company with instructions to the latter to retain the entire cash payment until the controversy regarding the 30-foot strip had been settled. On the following day plaintiff demanded of defendant an adjustment on the purchase price for failure to convey the 30-foot strip. Defendant refused to make any adjustment on the price but offered to release plaintiff from any obligation to carry out the contract, to return the cash payment of $3,000, as well as to pay the agent's commission. On November 24 (the day after the closing date set by the contract) defendant renewed his offer to release plaintiff, but in the meantime the latter had on November 21 executed two deeds of trust to the property and otherwise complied with the terms of the contract, and the deed signed by defendant and wife dated November 18 and placed in escrow with the title company was delivered to plaintiff. Prior to receiving defendant's letter of November 24, plaintiff moved into the property. Subsequently,

in about April 1945, after considerable negotiations plaintiff purchased a strip having a frontage of 36.6 feet, which included the 30-foot strip. He spent $2,500—whether for all of the property bought or for 30 feet thereof the record is not clear. It was this $2,500 which represented the damages awarded plaintiff.

The trial court made written findings of fact and conclusions of law. The court found for the plaintiff on two principal grounds: first, that by his act of omission in failing to instruct his agent as to the true facts of the nonownership of the 30-foot strip, defendant unwittingly set in motion the chain of circumstances by which the agent misrepresented that the 30-foot strip was part of the land to be sold to plaintiff; and, second, that under the doctrine of respondeat superior defendant was liable for the detriment suffered by the plaintiff because of the misrepresentation of the agent. The trial court also concluded that plaintiff had not waived the misrepresentation by proceeding with the contract, since, in the interim, before discovering the truth, plaintiff had not only obligated himself to surrender his home to another but had changed his position by starting to redecorate his new residence. The trial court also included in its conclusions a statement that defendant had "acted with the utmost integrity."

Defendant has assigned three errors: (1) That since plaintiff was furnished by the agent with a complete and accurate legal description of the land to be sold he was put in a position to make his own investigation and hence had no right to rely upon the representations of the agent; (2) that plaintiff by carrying out the terms of the written contract with prior knowledge of the facts elected to affirm the contract and waived any misrepresentation; and (3) that the trial court adopted an erroneous measure of damages.

We have concluded that the trial court ruled correctly on appellant's first point and that this case is governed in this respect by Seek v. Harris, 76 U.S.App.D. C. 404, 132 F.2d 19, rather than by Shappirio v. Goldberg, 20 App.D.C. 185, affirmed 192 U.S. 232,[1] 24 S.Ct. 259, 48 L.Ed. 419.

With respect to the question of waiver, the principle is well settled that when a contract is wholly executory, if one party learns that the other has been guilty of fraud in the inducement, or as to the subject matter, and in spite of such knowledge insists on performing the terms of the contract, he thereby waives any claims for damages he may have had against the other contracting party.[2] The reason given for this rule is that in such cases to permit a recovery would virtually be to allow damages for self-inflicted injuries. It is deemed to be the duty of the defrauded party on discovering the fraud to elect whether he will perform or rescind. If he elects to perform, he, in effect, makes a new contract.[3] The same rule with respect to waiver has been followed even where the person defrauded had proceeded in part to execute the contract before discovery of the fraud.[4]

It is plaintiff's principal contention that the question of waiver is not involved. He has proceeded on the theory that this is not a suit for damages for fraud and deceit, but one in the nature of specific performance of an oral agreement to convey the entire property including the 30-foot strip and that therefore there is applicable the principle that where one has agreed to convey real property and has put it beyond his control to convey all of the property the other party is entitled to the conveyance of the

---

[1] See also Goldsten v. Burka, D.C.Mun. App., 43 A.2d 712.

[2] Fitzpatrick v. Flannagan, 106 U.S. 648, 660, 1 S.Ct. 369, 27 L.Ed. 211; International Harvester Co. of America v. Rieke, 8 Cir., 9 F.2d 776, 780; Simon v. Goodyear Metallic Rubber Shoe Co., 6 Cir., 105 F. 573, 579, 52 L.R.A. 745; Kingman & Co. v. Stoddard, 7 Cir., 85 F. 740; Van Scherpe v. Ulberg, 232 Mich. 699, 206 N.W. 323, 324; Ponder v. Altura Farms Co., 57 Colo. 519, 143 P. 570, 572; Thompson v. Libby, 36 Minn. 287, 31 N.W. 52; 24 Am.Jur., "Fraud and Deceit," § 216; 12 R.C.L., "Fraud and Deceit," § 159.

[3] 24 Am.Jur., "Fraud and Deceit," § 216.

[4] Simon v. Goodyear Metallic Rubber Shoe Co., supra; Van Scherpe v. Ulberg, supra.

part owned and also to recover the value of the part which can not be conveyed. He relies principally upon Townsend v. Vanderwerker, 160 U.S. 171, 16 S.Ct. 258, 40 L.Ed. 383; Deery's Lessee v. Cray, 10 Wall. 263, 19 L.Ed. 887; 49 Am.Jur., "Specific Performance", § 105, and 58 C. J., "Specific Performance", § 601.

██ The trial court, rightly we think, refused to adopt plaintiff's theory of the case. This is not a suit for specific performance, neither do the facts or the authorities relied upon by plaintiff bear any relation to the facts of this case. The real point of plaintiff's argument had to do with the measure of damages, which will be referred to below.

The trial court ruled that plaintiff did not waive his right to sue for damages because, before discovering the truth about the lot, he had obligated himself to surrender his rented home and had started to decorate his new residence.

We have concluded that there was sufficient evidence to support the trial court's finding and that since waiver is ordinarily a question for the determination of the trier of the facts we are not justified in disturbing this finding on appeal. When plaintiff learned of the misrepresentation, he had abandoned a lease with nearly nine months to run, and his rented premises had been leased to another. At that time only about five days remained within which he was obligated to close the transaction with defendant and only about 10 days remained before the date when he was legally obligated to vacate his rented home. As was stated in Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., 116 F.2d 823, 833, he "could have rescinded the contract but was not obliged to do so as it was not probable a rescission would afford (it) an adequate remedy."[5] In Kingman & Co. v. Stoddard, supra, the question of waiver was decided against plaintiff but the court added, 85 F.2d at page 749, "Cases may possibly arise where the defrauded party may, by reason of the wrong, be unable to recede from his situation without prejudice." We believe this is such a case.

██ This leaves for consideration the question of the measure of damages. The effect of the court's ruling was ostensibly to award damages measured by what is usually called "loss of the bargain," that is to say, the value of the property he expected to get under the representations of the agent but did not receive under the written contract. Even this value, however, apparently is not represented by the judgment, first, because it is not clear from the evidence whether the $2,500 paid by plaintiff was for a strip with a frontage of 36.6 feet or for one 30 feet wide; and, second, because it appears that the price was that paid in 1945, nearly three years after the transaction between the parties. More important, however, such is not the measure of damages either in the District of Columbia nor in Maryland, both of which jurisdictions adhere to the principle laid down by the United States Supreme Court in Smith v. Bolles, 132 U.S. 125, 10 S.Ct. 39, 33 L.Ed. 279, and Sigafus v. Porter, 179 U.S. 116, 21 S.Ct. 34, 45 L.Ed. 113, that the measure of damages in cases of deceit includes only the direct consequences of the false representations; in other words, in contracts for the sale of property the amount recoverable is the difference between the amount paid and the market value of the thing acquired.[6] This is the correct rule which should have been applied in this case.

Reversed, with instructions to award a new trial.

[5] See also F. H. Smith Co. v. Low, 57 App.D.C. 167, 18 F.2d 817; Purington Paving Brick Co. v. Metropolitan Paving Co., 8 Cir., 4 F.2d 676, 680; Sumwalt Ice & Coal Co. v. Knickerbocker Ice Co., 112 Md. 437, 77 A. 56.

[6] Federal-American Nat. Bank & Trust Co. of Washington, D. C. v. McReynolds, 62 App.D.C. 291, 67 F.2d 251, certiorari denied 290 U.S. 666, 54 S.Ct. 87, 78 L. Ed. 576; A. W. Feeser, Inc., v. American Can Co., D.C., 2 F.Supp. 561, 565; Standard Motor Co. v. Peltzer, 147 Md. 509, 128 A. 451; 124 A.L.R. 59.