911 F.2d 819
 286 U.S.App.D.C. 77
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Elisabetta AGO, et al., Appellants,
v.
BEGG, INC., et al., Appellees.
 Nos. 89-7020, 89-7021 and 89-7023.
 United States Court of Appeals, District of Columbia Circuit.
 Aug. 28, 1990.
 
 Before HARRY T. EDWARDS, SILBERMAN and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on an appeal from the United States District Court for the District of Columbia. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by this court that the decision of the United States District Court from which this appeal has been taken is affirmed.
 
 
 3
 It is FURTHER ORDERED, sua sponte, that the clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Elisabetta and Pietro Ago, who were overseas at the time of the events recounted below, listed their Washington, D.C. home for sale through a real estate agent and old friend, Suzanne Madden, and her firm, Begg, Inc. Catherine Wojciak also worked for Begg. The property was purchased by Edgar Weisman. The selling agent was Betty Jacobsen, who worked for Noah & Cummings, Inc., which had a licensing agreement with Mount Vernon Realty, Inc., pursuant to which Noah & Cummings operated under the Mt. Vernon name. The Agos sued Madden, Wojciak, Begg, Jacobsen, and Mount Vernon, alleging, inter alia, negligence, tortious breach of fiduciary relationship, and fraud, all in conjunction with the sale of their house.
 
 
 5
 The real estate market in Washington at the time of the Ago transaction was woeful. But around that time Jacobsen was able to arrange a number of transactions in which Weisman agreed to pay the seller's asking price, subject to the seller taking back a second mortgage for a large portion thereof. In each transaction, Weisman obtained a substantial first mortgage, with the result that the seller's second mortgage was not fully secured by the equity in the property. According to Jacobsen, Weisman's business plan was to improve the properties and then to sell them at a profit. Under the circumstances, a sale to Weisman was, obviously, a risky transaction, in which a prudent seller would be particularly careful about the buyer's financial condition.
 
 
 6
 Weisman purchased the Agos' property for $265,000. He put down $70,000 in cash, of which the Agos received $16,610 after the existing mortgages, commissions, and other closing costs were paid. For the $195,000 balance of the purchase price, Weisman executed a note to Elisabetta Ago, secured by a second mortgage, which was subordinate to a $180,000 first mortgage Weisman had obtained. After Weisman defaulted on the first mortgage, the property was sold at foreclosure for $125,000, which wiped out the Agos' equity.
 
 
 7
 The district court submitted to the jury the claims of negligent breach of duty and of fraud, struck the claim for punitive damages, and directed a verdict in favor of Begg, Madden, and Wojciak (the Begg defendants) on the fraud claim. The jury found in favor of the Agos on all the counts submitted, with the exception of the fraud claim against Mount Vernon; it awarded them $400,000. Insofar as is relevant here, the district court remitted the award to $195,000, granted Jacobsen a judgment notwithstanding the verdict (JNOV) on the fraud count, and denied Mount Vernon's motion to set aside the judgment against it. See Ago v. Begg, Inc., et al., No. 85-2229, mem. op. (D.D.C. Dec. 15, 1988).
 
 
 8
 The Agos contend that the district court erred in directing a verdict for each defendant on the claim of tortious breach of fiduciary duty, directing verdicts for the Begg defendants on the claim of fraud; granting Jacobsen's motion for a JNOV; remitting the damages to $195,000; and refusing to allow punitive damages. Mount Vernon cross-appeals, arguing that the district court erred in denying its motion for a JNOV, and all defendants cross-appeal, conditionally, on three evidentiary issues that we need not reach unless we remand.
 
 ANALYSIS
 1. Failure to Instruct on Tortious Breach
 
 9
 We find no merit in the Agos' obliquely phrased claim of error with respect to the district court's failure to submit to the jury the claim of tortious breach of fiduciary duty. They argue that the court implicitly granted a directed verdict on the claim, because in ruling on the motions for directed verdict, the court stated that punitive damages would not be permitted and that the jury would be charged on fraud and negligent breach of fiduciary duty. The count of tortious breach of fiduciary duty, the Agos assert, would have allowed the jury to find liability for punitive damages on the basis of constructive fraud.
 
 
 10
 The Agos failed to put the district court on notice of their objection to what they now term the "compression" of the negligence and fiduciary duty claims, however, and therefore did not preserve the issue for appeal. Although the court, in ruling on the motion, referred to the fiduciary duty claim as "negligent violation of fiduciary relationship" with respect to the Begg defendants, it also stated that, with respect to Jacobsen, it would "send [the fraud count] to the jury along with the fiduciary relationship, and negligence theory." Thus, although there was evident confusion about whether the claim of tortious breach was distinct from the negligence and fraud claims, the Agos failed to advise the district court that they objected to what they now term the "compression" of those claims. See Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.") Indeed, counsel stated, "on behalf of the plaintiffs, we are satisfied."
 
 
 11
 Furthermore, the Agos received full compensatory damages; if they did not make out a case for punitive damages (a matter we will take up below), a finding of liability for a willful breach of fiduciary duty would not entitle them to any additional compensation.
 
 
 12
 2. Directed Verdicts for the Begg Defendants on Fraud
 
 
 13
 A directed verdict for a defendant is appropriate when no reasonable juror could find for the plaintiff. See Aylor v. Intercounty Construction Corp., 381 F.2d 930, 934 (D.C.Cir.1967). In order to establish fraud, the plaintiffs must prove that they reasonably relied upon the defendant's false representation or willful omission of a material fact, which the defendant made knowingly and with intent to deceive. The elements of fraud must be proven by clear and convincing evidence. See Raynor v. Richardson-Merrell, Inc., 643 F.Supp. 238, 243 (D.D.C.1986); Urban Investments, Inc. v. Branham, 464 A.2d 93, 98 (D.C.App.1983); Bennett v. Kiggins, 377 A.2d 57, 69 (D.C.App.1977).
 
 
 14
 The Agos contend that the Begg defendants committed fraud by representing to Mr. Ago that they had investigated Weisman and found that he had a net worth of $7 million; that the sale was not "unduly risky"; and that an investigation of similar Weisman deals indicated that he had fulfilled his commitments. Even assuming that such representations were made, however, there is no evidence that the Begg defendants knew they were false, or that they intended to deceive the Agos.
 
 
 15
 The Begg defendants received Weisman's net worth statement from Jacobsen. They relied upon the first mortgagee's approval as evidence of Weisman's creditworthiness. To accept the extension of credit by a lender with little exposure as proof of a debtor's capacity to repay a larger sum is at least naive and probably foolhardy, but it is not by itself fraudulent.
 
 
 16
 We find no reference in Mr. Ago's testimony (to which the Agos direct us) of a discussion with Madden and Wojciak concerning "other construction work done by Weisman under the same kind of agreement." Ago Brief at 10. Mr. Ago did testify, however, that either Madden or Wojciak told him that "they had already dealt with [Weisman] and they ... were satisfied with his capability." Wojciak testified that she spoke with Jacobsen, learned that Weisman intended to use a portion of the first mortgage proceeds to renovate the property, and so informed the Agos. Wojciak also spoke to Neil Degnan, a Begg employee who had been involved in two other of Weisman's purchases. Degnan advised her that Weisman was paying under those contracts, which involved similar financing arrangements. Wojciak relayed this information to the Agos. The Agos, obviously, made a bad deal on the basis of bad advice, but the evidence does not support a finding that the Begg defendants defrauded them.
 
 3. Grant of JNOV for Jacobsen on Fraud
 
 17
 The Agos allege that Jacobsen defrauded them by failing to advise them that Weisman had not completed promised improvements to other properties; giving them a statement of Weisman's net worth that she knew to be false; and failing to alert them to the risks of the subordination agreement.
 
 
 18
 The Agos introduced a schedule of assets indicating that Weisman overstated the value of properties he had recently purchased, through Jacobsen, in estimating his net worth. The statement, however, was prepared after the Ago transaction, and therefore cannot serve to prove that Jacobsen was aware at the relevant time that Weisman overstated his net worth.
 
 
 19
 Jacobsen told Wojciak that some of the first mortgage funds would be used for renovations. Jacobsen was aware that Weisman had performed renovation work on some of the properties he had previously purchased, and there is no evidence that she did not actually believe that he would improve the Agos' property. We see no clear and convincing evidence, therefore, that she knew that Weisman did not intend to discharge his obligation to the Agos.
 
 4. Remittitur
 
 20
 In remitting the damages for negligence to the principal amount of the note, the district court correctly recognized that, under District of Columbia law, the defendants are liable only for the Agos' "out of pocket" loss, not for the full benefit of their bargain, i.e., the interest they would have received on the note had Weisman not defaulted. See Dresser v. Sunderland Apts. Tenants Assoc., Inc., 465 A.2d 835, 840 & n. 18 (D.C.App.1983). Under the out-of-pocket rule, "the amount recoverable is the difference between the amount paid and the market value of the thing acquired." See Horning v. Ferguson, 52 A.2d 116, 119 (D.C.1947). That is what the district court ordered in this case; the interest that would have been paid on the note is an indirect, or speculative, loss reflecting the "benefit of the bargain," not the Ago's "out-of-pocket" loss. In those "rare cases" in which the plaintiff may receive the benefit of the bargain, Dresser, 465 A.2d at 840 n. 18, the conduct must, at a minimum, be fradulent. Even the "victim of deceit in the sale of property," was not entitled to more than its out-of-pocket loss in Dresser. Id. at 840.
 
 
 21
 The Agos' out-of-pocket loss was, at most, the face value of the note. The Agos' argument that they are entitled to interest to reflect the time value of money is not supported by their reference to D.C.Code Sec. 15-108. That statute provides for interest on a liquidated debt, but none of the defendants was the Ago's debtor.
 
 5. Denial of Punitive Damages
 
 22
 Punitive damages are allowed only if the conduct complained of was "willful and outrageous ... or ... result[ed] in gross fraud." Boynton v. Lopez, 473 A.2d 375, 377 (D.C.App.1984). Absent evidence of evil motive, punitive damages are improper. Feltman v. Sarbov, 366 A.2d 137, 141 (D.C.App.1976). Indeed, even "the finding of intentional misrepresentation" does not warrant the award of punitive damages in the absence of such evidence. Boynton, 473 A.2d at 377. Because the conduct of the defendants did not amount to fraud, the district court properly denied the Ago's request for an instruction on punitive damages.
 
 
 23
 6. Denial of JNOV for Mount Vernon on Agency Liability
 
 
 24
 Finally, we affirm the district court's denial of Mount Vernon's motion for a JNOV with respect to its liability for Jacobsen's negligence. The district court found that Jacobsen was Mount Vernon's apparent agent. Mount Vernon argues that it cannot be held liable because Jacobsen was not its agent and because the Agos, who had no contact with Jacobsen, could not have relied upon Mount Vernon's reputation.
 
 
 25
 First, as the district court held, the reasonable inference to be drawn when a real estate agency licenses a real estate professional to use the agency's name is that the licensor stands behind the "expertise, reputation, credibility, and dependability" of the licensee. Mem. op. at 14 (emphasis in original). Second, Madden and Wojciak were aware of Jacobsen's affiliation with Mount Vernon, and they reasonably relied upon it.
 
 
 26
 Finding no error in the rulings of the district court, the judgment is in all respects
 
 
 27
 Affirmed.