## JACKSON & SHARP COMPANY *v.* FAY.

---

### DECEIT; PLEADING AND PRACTICE; DAMAGES.

1. Where the declaration in an action of deceit alleged that the defendant, who was an attorney engaged in the prosecution of a claim of the plaintiff's debtor against the United States, in August, 1895,

represented to the plaintiff that the proceeds of the claim, if there should be any, would pass through his hands, and that it would be safe for the plaintiff to accept an order by the claimant on the defendant in settlement of his debt, but kept the plaintiff in ignorance of the fact that under the rules of the Treasury Department the money when and if paid would be paid directly to the claimant; whereupon such an order was given by the claimant to the plaintiff, and accepted by the defendant, payable out of the first funds coming into his hands out of such claim; and the plaintiff thereupon refrained from protecting himself by legal proceedings as he could, and otherwise would, have done, and that not until February, 1900, when it was too late for the plaintiff to so protect himself, the defendant notified the plaintiff that the money would be paid directly to the claimant, and thereupon aided the claimant to collect it himself, whereby the plaintiff wholly lost the money due him, to his damage in the amount of such debt; it was *held*, that, even if the representations of the defendant amounted to something more either than the mere expression of a misleading opinion, or what has been called a " promissory statement," upon which no action of deceit will lie, the declaration was demurrable because it did not appear from it that the plaintiff had sustained any appreciable damage.

2. Where on an appeal, in such a case, by the plaintiff from a judgment for the defendant, a general demurrer to the declaration having been sustained and the plaintiff having elected not to amend his declaration, the judgment was affirmed by this court, a motion by the appellant to modify the judgment of affirmance so as to allow an amendment of the declaration in the particular in which this court held it defective, upon the ground that this court based its decision upon a different ground from that on which the court below proceeded, was *denied.* Such applications will not be entertained except for very grave reasons and in exceptional cases.

No. 1173.   Submitted April 8, 1902.   Decided May 7, 1902.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia for the defendant in an action of deceit, a demurrer to the declaration having been sustained and the plaintiff having elected not to amend.                                 *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment sustaining a demurrer to and dismissing a declaration in an action of deceit.

The declaration reads as follows:

The plaintiff sues the defendant for that heretofore, to wit, on the 14th day of August, 1895, and for some time prior thereto, one Daniel A. Driscoll was indebted to the plaintiff in the sum of $732, to wit, for labor and materials furnished by the plaintiff to the said Driscoll to enable him to complete a contract entered into by him with the United States for the construction of the New Haven, Connecticut, post-office building, for which indebtedness the said Driscoll applied to the plaintiff to accept his order upon the defendant in the sum of $732, directing the defendant to pay to the plaintiff the said sum out of the first moneys realized from a suit by the said Driscoll against the United States, then about to be brought in the Court of Claims, to recover the balance of the contract price and extra work due to said Driscoll from the United States for and on account of said building, and the plaintiff, before accepting said order, conferred with the defendant, who was and for many years had been an attorney at law, and was then employed in that capacity to prosecute the said claim of the said Driscoll against the United States in the Court of Claims, to learn from the defendant whether the moneys which the said Driscoll might or should recover in the said action would pass through the hands of the said defendant so that the plaintiff would be safe in acceptance thereof, and it then and there became the duty of the defendant to inform the plaintiff of the fact, which was well known to him, but of which the plaintiff was wholly ignorant, that under the rules, regulations, and practice of the Treasury Department, by which department the said claim would be paid after judgment recovered, the proceeds of the said claim or judgment would not be paid to the defendant, but would be paid to the said Driscoll personally, and the defendant, disregarding his said duty in the premises, but, on the contrary, wrongfully intending to mislead

the plaintiff to its injury, and to induce it to accept the said order, represented and declared to it that the moneys which would result or be realized from the said suit would certainly pass through his hands, and that he would thereby be enabled to pay to the plaintiff the amount of the said order, and that he would make payment thereof, to wit, when the said claim had been reduced to judgment and paid, and thereupon the plaintiff, in reliance upon the said statement of the said defendant, accepted from the said Driscoll an order upon the defendant substantially in the words and figures following:

In the Court of Claims.

DANIEL A. DRISCOLL
        *v.*
THE UNITED STATES.

Action against the United States to recover balances and extra work for the construction of the United States Government building at New Haven, Conn.

John C. Fay, attorney at law, Washington, D. C.

DEAR SIR: Please pay to the Jackson & Sharpe Company, of Wilmington, Delaware, out of the first money realized from the above-described claim, after payment of expenses of litigation and counsel fees, the sum of seven hundred and thirty-two dollars.

Dated at Washington, D. C., August 14th, 1895.

        (Signed)        DANIEL A. DRISCOLL.

And the said defendant thereupon accepted the said order substantially in the words and figures following:

Accepted, payable out of the first funds coming into my hands out of said claim.

August 14, 1895.

        (Signed)        JOHN C. FAY.

And the plaintiff, relying upon said order and acceptance and upon the representations and assurances of the defendant that the moneys realized from the said claim or upon the judgment which should be recovered thereupon would come

into his hands and would by him be applied to payment of the said order, thereupon refrained from protecting itself by legal proceedings, as it could and would otherwise have done, which representations and assurances the defendant, wrongfully intending to mislead the plaintiff to its injury, as aforesaid, continued to make, to wit, from time to time until the said claim had resulted in judgment and was actually about to be paid, to wit, until the 12th day of February, 1900, when for the first time, and when it was too late for the plaintiff to protect itself by legal proceedings against the said Driscoll, the said defendant, well knowing the same, notified the plaintiff that the avails of the judgment would be paid to the said Driscoll direct, and would not come into his hands at all, and the said defendant thereupon co-operated with and aided the said Driscoll to receive the said moneys directly, without passing through the hands of him, the said defendant, and by reason of the said wrongful and untrue representations and affirmations of the defendant that the said moneys would pass through his hands, intended by him to mislead the plaintiff, as aforesaid, and made with knowledge by the defendant that, under the rules, regulations, and practice of the Treasury Department, the said moneys would not come into his hands, the plaintiff has been misled, deceived, and imposed upon, and has wholly lost the said moneys, to its damage in the sum of $732.    Wherefore it brings this suit.

*Mr. J. J. Darlington, Mr. E. S. Douglass,* and *Mr. Joseph D. Wright* for the appellant:

1. If the misrepresentations in question could properly be held to be statements as to future or promissory facts (which is denied) still the true rule in such cases is that, if the misrepresentation, although in regard to the future, be made with the purpose of misleading and deceiving the plaintiff, and without any intention on the part of the defendant of ever fulfilling or complying with the terms of the misrepresentation, and with knowledge upon his part, and correspond-

ing ignorance on that of the plaintiff, of facts which render their performance impossible or even very improbable, then he is guilty of willfully deceiving and misleading the plaintiff and of inducing him to act to his injury, as he would not otherwise have acted, and is liable in damages for whatever loss the plaintiff sustains in consequence of them. *Russ Lumber Co.* v. *Muscupiable Land Co.,* 120 Cal. 521; *Bank* v. *Hammond,* 25 Col. 367; Big. on Torts (7th ed.), Sec. 125; *Touchstone* v. *Staggs,* 39 S. W. Rep. 189 (Tex.); *French* v. *Ryan,* 104 Mich. 625. Having assumed to advise the plaintiff, it was the defendant's duty to do so fairly and fully and to disclose all the facts which would render it impossible or improbable for him to collect the money; and having omitted to do this, and especially as the omission is for present purposes admitted to have been for the very purpose of misleading the plaintiff, he must answer for whatever damage the latter has suffered. A misrepresentation of one's opinion is a misrepresentation of a present and not a future fact. Big. on Torts (7th ed.), Sec. 124; *Birdsey* v. *Butterfield,* 34 Wis. 52; *Hedin* v. *Minneapolis Institute,* 62 Minn. 146; 35 L. R. A. 417; *Montgomery Southern R.R. Co.* v. *Matthews,* 77 Ala. 357; *Kent County R.R. Co.* v. *Wilson,* 5 Houst. (Del.) 49; Cooley on Torts, Secs. 484, 487; *Thompson* v. *Phœnix Ins. Co.,* 75 Me. 55.

2. The rules and regulations of the Treasury Department are made by the Secretary of the Treasury for the purpose of governing the internal workings of that department, and under no view of law do they constitute such a class as would raise the presumption of knowledge of them upon the part of the defendant. This presumption cannot arise merely from the fact that the courts take judicial cognizance of such rules and regulations. It cannot be argued that, because the courts take judicial cognizance of all of the public statutes of the States, a citizen of one State will be presumed to know the statutes of every other State. *Finch* v. *Mansfield,* 97 Mass. 89.

In the second place, the presumption that every man knows the law has no application to the case of a layman applying

to a lawyer for information as to the law, and relying upon the information given.

3. It is true that the relationship of attorney and client, existing between defendant and Driscoll, might have been terminated before the money in question was recovered from the Government. The plaintiff took, as it had a right to take, the chance that this would not occur. It never did occur — and if it had done so, and if the defendant had so informed the plaintiff, as it would have been his duty to do, the latter would not have been without remedy.

It is a novel proposition that legal liability for the loss arising from a tort may be escaped by showing that if something had happened which did not happen, the plaintiff would have lost anyway.

4. The question whether the notice ultimately given by the defendant to the plaintiff that the money would not pass through his hands was given in time to enable the plaintiff to protect itself would in a proper case under the pleadings, be a question of fact, or of mixed law and fact — not one to be passed upon by the court upon demurrer to the declaration. In the present case, however, the declaration alleges, and the demurrer admits, that the notice was not given until as the defendant well knew, it was too late for it to protect itself.

5. The plaintiff could have protected its claim by proper proceedings against Driscoll to subject his interest in the suit between him and the United States, to the payment of the plaintiff's claim. This could have been done by the appointment of a receiver to collect the proceeds arising out of the said claim against the United States. *Price* v. *Forrest,* 173 U. S. 410. See also *Borcherling's Case,* 35 Ct. Cl. 311; *S. C.,* 185 U. S. 223; *Sanborn* v. *Maxwell,* 18 App. D. C. 245, 250.

6. As a general rule, misrepresentations as to matters of law may not constitute sufficient ground for an action for damages. Where, however, the relation of trust and confidence exists, the rule is different. 14 Am. & Eng. Encyc. of Law (2d ed.), 57; *Townsend* v. *Cowles,* 31 Ala. 428; *Gordon* v. *Butler,* 105 U. S. 558; *Hedin* v. *Minneapolis*

*Medical & Surgical Institute,* 62 Minn. 146; 35 L. R. A. 417; Bigelow on Torts, 65; *Smith* v. *Patterson,* 33 Ohio St. 70; *Bradner* v. *Strang,* 23 Hun, 445; *McCormick* v. *Malin,* 5 Blackf. 509. It is submitted that, under the facts and circumstances of the case at bar, a relation of trust and confidence did exist between the plaintiff and the defendant. This is true even though the defendant undertook to render a professional service gratuitously. *National Sav. Bank* v. *Ward,* 100 U. S. 195; *Davis* v. *Morgan,* 19 Mont. 145; 1 Am. & Eng. Encyc. of Law (2d ed.), 1070; *Shiels* v. *Blackburn,* 1 H. Bl. 158; *Wilson* v. *Brett,* 11 M. & W. 113; *Coggs* v. *Bernard,* 1 Smith's Lead. Cas. (9th Am. ed.) 354; *Perkins* v. *West Coast Lumber Co.,* 129 Cal. 427; *Eckles* v. *Stephenson,* 3 Bibb (Ky.), 517; *Stephens* v. *White,* 2 Wash. (Va.) 203; *Brome* v. *Diggles,* 2 Chitty, 311; *Whitehead* v. *Greetham,* 2 Bing. 464.

The only case we have been able to find which appears not to be in harmony with the above decisions is the case of *Fish* v. *Kelly,* 17 C. B. (N. S.) 194, but the court there expressly held that if the transaction had been effected by fraud, its decision would have been otherwise.

*Mr. A. A. Hoehling, Jr.,* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

Assuming without necessarily deciding, that the representations of the defendant amounted to something more either than the mere expression of a misleading opinion, or what has been called a promissory statement, upon which no action of deceit will lie, we are of the opinion that the declaration is fatally defective upon another material ground.

To maintain an action of deceit, it must not only be made to appear that the plaintiff has been induced to take, or refrain from action by reason of the willful or reckless misrepresentations of a material fact, but also that through such action or its omission, he has sustained some appreciable damage. *Ming* v. *Woolfolk,* 116 U. S. 599, 603; *Marshall* v.

*Hubbard,* 117 U. S. 415; Am. & Eng. Encyc. of Law (2d ed.), p. 137.

The defendant having demurred, the facts alleged in the declaration with all the necessary and reasonable inferences therefrom must be accepted as true. The recitals thereof charging fraud are so precise and elaborate, in respect of the purpose of the inquiry, the particular statement made in response thereto, and the expected and known reliance placed thereon, that we have assumed their sufficiency as before stated. But the same cannot be said of the allegations in respect of the damages sustained.

The final words of the declaration, that plaintiff " has wholly lost " the money due it from Driscoll is a conclusion merely, without sufficient foundation in preceding allegations of fact. The entire allegation of damages is that, through reliance on the representations of the defendant, the plaintiff " refrained from protecting itself by legal proceedings, as it could and would otherwise have done." It is not alleged, however, that plaintiff promised or agreed to refrain from taking action against Driscoll in consideration of the order and acceptance and the representations of the defendant.

It was not of course certain that Driscoll would obtain a judgment at all on his claim against the Government, and plaintiff alleges no promise to await its determination. It is not alleged that Driscoll was solvent then or that the demand could have been made out of him at the time, and that he became insolvent during a reasonable period of forbearance induced, and intended to be induced by the representations made. The order was accepted August 14, 1895, and on February 12, 1900, defendant notified the plaintiff that the money on the judgment would be paid directly to the said Driscoll and would not come into the hands of the defendant.

At that time, it is charged that it was " too late for plaintiff to protect itself by legal proceedings against the said Driscoll." But why it was then too late, or why plaintiff had taken no steps during the long interval remains matter of conjecture only. It was suggested on the argument that

the claim against Driscoll had become barred by limitation because more than three years had been suffered to elapse after the execution of the order.

Whether limitation began to run against an action on the order itself from its date, or from the time when plaintiff received the notice that the defendant's acceptance thereof had become futile through Driscoll's exercise of his undoubted power over the judgment, is a question that need not be considered.

For aught that appears in the declaration, the claim against Driscoll may have been then in judgment, or evidenced by an instrument under seal, or kept alive by new promises if in the nature of a simple contract.

We think that the court was right in sustaining the demurrer, and the judgment will be affirmed with costs. It is so ordered.                *Affirmed.*

A motion on behalf of the appellant to modify the judgment of affirmance, was denied on the 23d day of June, 1902, Mr. Justice MORRIS delivering the opinion of the Court:

In this case, upon a demurrer filed by the appellee Fay, as defendant in the court below, to the declaration of the appellant as plaintiff, the demurrer was sustained; and the plaintiff thereupon electing to stand by its declaration had judgment rendered against it, from which it appealed to this court. Here the judgment was affirmed. Now the appellant comes and moves the court for a modification of the judgment of affirmance in such manner " as will admit of an amendment of the pleadings in the particular in which this court holds them to be defective."

Plainly this is an application which should not be entertained, except for very grave reasons and in exceptional cases. The ground of the application is that this court based its decision upon a very different ground from that on which the court below proceeded. But the demurrer was a general demurrer to the plaintiff's declaration, in which several grounds of invalidity of the declaration were stated; and if

the court below preferred to rest its decision on one of these grounds and this court upon another, it is not apparent that the plaintiff was not duly notified of the imperfections of its case as made by it. Instead of amending its declaration, as it was then duly notified to do, it deliberately elected to stand by that declaration and to try its fortunes in this court, with the reservation, as we may assume, that it would go back and try the case over again, if the decision against it should happen not to be sustained upon the precise grounds for it assigned by the court below. We find no warrant in law for this practice; and we do not think that it would be in accordance with the requirements of justice.

Various cases have been cited in which appellate courts have remanded causes for the purpose of amendment in order that full justice might be done in the premises. *Magruder* v. *Belt,* 7 App. D. C. 303; *Waite* v. *Larocque,* 12 App. D. C. 410; *Wiggins Ferry Co.* v. *Railroad Co.,* 142 U. S. 396; *Liverpool, etc., Co.* v. *Phœnix Co.,* 129 U. S. 397; *Jones* v. *Meehan,* 175 U. S. 1; *Melville* v. *Railroad Co.,* 2 Mackey, 63; *Merrick* v. *Giddings,* McA. & Mackey, 57. The majority of these cases are of equity cognizance, wherein it is always proper to direct amendment whenever the interest of justice seems to require it. But we have no hesitation in saying that we think that in causes at common law as well as in equity the power of amendment conferred by statute may be freely exercised or authorized by appellate courts, if such is the requirement of justice in the particular case. We do not find any such requirement in the present case; and the cases cited from 2 Mackey and McArthur & Mackey are not authority for the exercise of the jurisdiction here. Apart from the peculiar relations between the special terms and the general term of the Supreme Court of the District of Columbia, which authorized appeals from the special terms to the general term in many cases of an interlocutory nature without waiver of the right to amend, we think that a careful perusal of the two cases cited will show that there were special circumstances in each which justified the appellate branch of that court in the allowance of amendment. Here we have a distinct notification to a party that his plead-

ing is defective and that he should amend, if he would recover, and a positive refusal by him to avail himself of his right. If we were to allow or direct amendment now, it would be impossible in the future to have any finality in such cases, either in the court below or in this court.

The motion for modification must be *refused*.