Darrell A. DRESSER, Appellant,

v.

SUNDERLAND APARTMENTS TENANTS ASSOCIATION, INC., et al., Appellees.

No. 82–252.

District of Columbia Court of Appeals.

Argued Jan. 18, 1983.

Decided Aug. 22, 1983.

Michael Nussbaum, Washington, D.C., for appellees.

James P. Davenport, Washington, D.C., with whom Richard S. Ewing, Roger E. Warin, and Elizabeth Fitch, Washington, D.C., were on brief, for appellees Leahy, Owens, Keller, Kass, Weissbard, Hendricks and First Condominium Realty Consultants, Inc. Jeffrey L. Squires, Washington, D.C., was on the brief, for appellee Lauren Condominium Unit Owners Assn.

Michael B. McGovern, Washington, D.C., also entered an appearance for appellee the Lauren.

Donald Cefaratti, Jr., Washington, D.C., also entered an appearance for appellee Sunderland Apartments Tenants Assn.

Thomas A. Mauro, Washington, D.C., with whom Thomas A. Rothwell, Washington, D.C., was on briefs, for appellant.

Before TERRY, Associate Judge, and REILLY, Chief Judge, Retired, and KELLY, Associate Judge, Retired.[1]

PER CURIAM:

Appellant challenges the trial court's grant of appellees' motion for summary judgment on his claim for damages arising

---

1. Judge Kelly was an Associate Judge of the court at the time of oral argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

from the purchase, and attempted resale, of a condominium unit. We affirm.

## I

In August 1979, the Sunderland Apartments Tenants Association (SATA), of which appellant was a member, purchased the Sunderland Apartments, located at 1320 Twentieth Street, N.W., Washington, D.C., with the purpose of converting the building to condominium ownership.[2] Elected to membership on the board of directors and as officers of SATA were appellant's fellow tenants Robert Leahy (President), John Gullett (Vice-President), Steven Keller (Second Vice-President), and William Owens (Treasurer). Attorney Benny Kass was retained as SATA's counsel.

To facilitate the conversion, SATA contracted with the First Condominium Realty Consultants (FCRC), as an outside consultant, to assist in preparing the documentation necessary to comply with statutory requirements;[3] to secure necessary government approval and financing; and to sell the condominium units. Bruce Hendricks was president of FCRC and Samuel Weissbard served as counsel.

The public offering statement (POS) required by law,[4] was prepared for use in the conversion by attorneys Kass and Weissbard, counsel for SATA and FCRC respectively. After acceptance by SATA's board of directors, the POS was executed by SATA, as the declarant,[5] and was filed for government approval. On December 18, 1979, the approval of the D.C. Department of Housing and Community Development was received.

The first sale of a unit of the newly created condominium was on January 8, 1980. Six days later, on January 14, appellant settled on his eighth floor unit. As a qualified member of SATA, he received a special insider purchase price of fifty-six thousand three hundred dollars ($56,300).

By early March 1980, appellant listed the unit for resale. Within several days, he received a written offer from Dr. William Thompson for the purchase price of one hundred thousand dollars ($100,000). Dr. Thompson, a psychiatrist, desired the apartment for use as his professional office. Uncertainty as to future restrictions on non-residential use of units above the first floor ultimately led to the breakdown of negotiations between appellant and Dr. Thompson. Within the year, however, appellant succeeded in selling his condominium unit—this time to a residential user—for eighty-five thousand dollars ($85,000).

Appellant originally filed suit in April 1980, shortly after negotiations with Dr. Thompson ended in failure. The complaint sought certification as a class action, money damages from seven defendants,[6] and an

2. SATA was organized and incorporated by the tenants of the Sunderland Apartments to take advantage of a statutory right of first refusal upon notice from the owner of his intent to sell. See D.C.Code § 45–1699.9 (1979 Supp.). This provision was repealed and replaced by Title IV of the Rental Housing Conversion and Sale Act of 1980, D.C.Law 3–86, §§ 401 through 413, 27 D.C.Reg. § 2975 (1980), codified as D.C.Code §§ 45–1631 through 1641 (1981).

3. See D.C.Code §§ 5–1201 et seq. (1978 Supp.) (recodified as §§ 45–1801 et seq. (1981)).

4. D.C.Code § 5–1262(b) (1978 Supp.) (recodified as § 45–1862(b) (1981)) requires that a public offering statement (POS) be provided by a declarant to each purchaser of a condominium unit. The required content of a POS is found in § 5–1264 (1978 Supp.) (recodified as § 45–1864 (1981)).

5. D.C.Code § 5–1202(k) (1978 Supp.) (recodified as § 45–1802(11) (1981)) defines the declarant as

all persons who execute the declaration, or on whose behalf the declaration is executed or proposed to be executed. From the time of the recordation of any amendment to the declaration expanding an expandable condominium, all persons who execute the amendment or on whose behalf that amendment is executed shall also come within this definition. Any successors of the persons referred to in this subsection who come to stand in the same relation to the condominium as their predecessors did shall also come within this definition.

6. The original seven defendants were (1) SATA; (2) Benny Kass, as SATA's attorney; SATA's board of directors and officers: (3) Robert Leahy, (4) John Gullett, (5) Steven Kel-

injunction against further sales of condominium units in the building. Six months later, on October 30, 1980, appellant moved to amend the complaint to add three additional defendants,[7] and to realign the Lauren as a plaintiff. Then, in January 1981, without motion under Super.Ct.Civ.R. 15(a) for leave to file, appellant submitted a substitute amended complaint and a further request for preliminary injunctive relief.[8]

By order of February 26, 1981, the trial court allowed appellant to file the amended complaint of October 30,[9] but denied his request to realign the Lauren as a plaintiff. It denied leave to file the substitute amended complaint of January 1981, and denied as

moot the motion for a preliminary injunction based upon the allegations of that complaint. Then, on July 24, 1981, the court dismissed the amended complaint for failure to state a claim against appellees Hendricks, FCRC and Weissbard.[10] In a subsequent order and opinion entered January 12, 1982, the court granted summary judgment for the remaining appellees (Kass, SATA, Leahy, Owens and Keller).[11]

## II

Appellant argues, principally, that in entering summary judgment for appellees, the trial court applied an erroneous measure of damages.[12] Ruling on appellees'

---

ler, and (6) William Owens; and (7) "the Lauren, a Condominium" (presumably intended by appellant to be the Lauren Condominium Unit Owners Association).

**7.** The three additional defendants were (1) FCRC; (2) Bruce Hendricks, president of FCRC; and (3) Samuel Weissbard, counsel to FCRC.

**8.** The substitute amended complaint alleged that FCRC and Hendricks had improperly acquired from SATA six apartment units and fifty thousand dollars ($50,000) in cash and sought to have the sale of these units enjoined.

**9.** Appellant's first amended complaint contained seven counts against various appellees. Count I essentially stated a claim of common law fraud, alleging that appellant was damaged by misrepresentations contained in the POS which was prepared and executed by appellees SATA, Kass, Owens, Leahy and Keller. Count II alleged that appellee Owens tortiously interfered with appellant's efforts to sell his condominium unit to Dr. Thompson. Count III stated a similar claim of tortious interference with a business relationship against defendant Gullett. Count IV alleged a breach of duty owed to appellant by appellees the Lauren, Owens, Leahy, Keller, Kass and SATA to assist him with the resale of his unit by furnishing him with written assurances of the permissibility of non-residential uses by prospective purchasers. Count V alleged a breach of a fiduciary duty owed to appellant by appellees Kass, Owens, Leahy and Keller arising from the course of conduct previously described in the complaint. Count VI demanded that the various appellees cure the alleged defective POS, and Count VII demanded punitive damages for the wilful misconduct of all appellees.

At some time before this order, the trial court apparently denied certification to appellant's proposed class.

**10.** Appellant's request for reconsideration of the dismissal as to appellees Hendrick and FCRC was, after argument, denied from the bench.

**11.** Defendant Gullett previously was dismissed by stipulation of the parties.

**12.** There is no merit in appellant's several other assertions of error by the court, e.g., (1) in dismissing as to appellees, the Lauren, Weissbard, FCRC and Hendricks, (2) in holding that appellees Kass, Leahy, Owens and Keller owed him no duty, (3) in rejecting the substitute amended complaint, and (4) in dismissing the tort claim against appellee Owens.

As to the first two assertions of error, even had appellant presented a prima facie case of fraud, liability for the asserted misrepresentation would not affix to the four appellees dismissed (the Lauren, Weissbard, FCRC and Hendricks). Further, we note that the court ruled, not that appellees Kass, Leahy, Owens and Keller owed appellant no duty, but rather, assuming a duty existed, that appellant had proved no compensable damages. *See* discussion in text regarding damages, *infra.* In addition, by denying appellant leave to file a second amended complaint, the court did not abuse its discretion. *See Blake Construction Co., Inc. v. Alliance Plumbing & Heating Co., Inc.,* 388 A.2d 1217, 1220 (D.C.1978), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 460 (1979). At the time it was submitted, the case was nine months old and had generated substantial discovery. The issues newly raised were substantially unrelated to the seven counts stated in the previous two complaints and, moreover, its submission to the court was without request for leave to file under Super.Ct.Civ.R. 15(a).

motion, the trial court assumed that appellant had adequately established the liability of all appellees but found that there existed no genuine dispute as to the material element of damages. *See* Super.Ct.Civ.R. 56(c). Having purchased his unit for fifty-six thousand three hundred dollars ($56,300) and having sold it within a year for eighty-five thousand dollars ($85,000), appellant had suffered no out of pocket loss.

Exercising our function on appeal to determine whether any factual issues did exist, *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978), and reviewing the record in the light most favorable to appellant, we conclude that the trial court did not err in entering summary judgment for appellees.

### III

Underlying each count of appellant's amended complaint was the asserted misrepresentation of the POS relative to the prospective, qualified, non-residential use of condominium units.[13] But as the trial court properly found in its well crafted opinion, despite the varied language with which the several counts were cloaked, the complaint presented in essence a claim of common law fraud.[14]

A prima facie case of fraud requires a showing of (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action taken by appellant in reliance upon the representation, (6) which consequently resulted in provable damages. *Bennett v. Kiggins, supra,* 377 A.2d at 59; *Isen v. Calvert Corp.,* 126 U.S.App.D.C. 349, 353, 379 F.2d 126, 129–30 (1967). To recover, appellant's proof of damages was crucial. *See Jackson & Sharp Co. v. Fay,* 20 App.D.C. 105, 112 (1902) (to maintain an action in deceit, a plaintiff must show "some appreciable damage"); *accord Shear v. National Rifle Association of America,* 196 U.S.App.D.C. 344, 352, 606 F.2d 1251, 1259 (1979) (reliance which proximately and directly results in damage to that person); *Day v. Avery,* 179 U.S.App.D.C. 63, 74, 548 F.2d 1018, 1029 (1976) (per curiam) ("a *sine qua non* of any recovery for misrepresentation is a showing of pecuniary loss proximately caused by reliance on the misrepresentation"), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d

Finally, with regard to the dismissed tort claim, assuming appellant established a prima facie case of tortious interference by appellee Owens, the court did not err in finding the asserted interference to be privileged by reason of Owens' ownership of an eighth floor condominium unit. *See Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 289 (D.C. 1977) (citing *Zoby v. American Fidelity Co.,* 242 F.2d 76 (4th Cir.1957); *accord* W. Prosser, Law of Torts § 129, 942–46 (4th ed. 1971) ("If [the defendant] has a present, existing economic interest to protect, such as the ownership or condition of property, ... he is privileged to prevent performance of the contract of another which threatens it ....").

**13.** The POS freely recognized the applicable zoning regulations, stating in part:

> E. *Restrictions on Use*
>
> The property is zoned SP–2, a zoning category which allows residential, professional office and non-profit commercial uses. Although the Declarant expects that most of the units (other than parking units) will be occupied as residences, the Declarant does not intend to restrict other lawful uses *pro-*

*vided* that at least eighty percent (80%) of the Residential Units are purchased by persons occupying their units as principal residences. The foregoing limitation is consistent with the requirements of the secondary mortgage market relating to the purchase of condominium mortgage loans.

Appellant contends, however, that the POS was incomplete because it failed to reflect a SATA resolution, which proposed to limit the right of a purchaser to resell any unit for a qualified, non-residential use. In addition, appellant argues that the POS failed to state that a certificate of occupancy was a prerequisite to any qualified, non-residential use and, further, that such certificates were difficult to obtain. We express no opinion on the validity of this contention.

**14.** Appellant's claim that the Condominium Act of 1976, D.C.Code §§ 5–1201 *et seq.* (1978 Supp.) (recodified as §§ 45–1801 *et seq.* (1981)), provides remedies additional to those of the common law are incorrect. At most, the Act provides standing to sue for noncompliance with its provisions. *See id.,* § 5–1219 (1978 Supp.) (recodified as § 45–1819 (1981)).

394 (1977).[15] The nature of the required proof of damages, however, varied with appellant's conduct upon discovery of the fraud.

■■■ Where a party to an executed contract discovers a material misrepresentation made in the execution of the contract, that party may elect one of two mutually exclusive remedies. He may either affirm the contract and sue for damages, or repudiate the contract and recover that with which he or she has parted. *Millard v. Lorain Investment Corp.*, 184 A.2d 630, 632 (D.C.1962); *Kent Homes, Inc. v. Frankel*, 128 A.2d 444, 445 (D.C.1957). The latter alternative, rescission, entitles the defrauded party to recover "special damages"—"those expenditures made in reliance upon the misrepresentation ... [as] a part of the restitution which is required in order that the parties might be placed in status quo ante." *Kent Homes, Inc. v. Frankel, supra*, 128 A.2d at 446.[16]

■■■ Appellant elected the former alternative. He forewent rescission of the contract for purchase of his condominium unit, choosing to remain with the property and to seek remedy for the fraud assertedly perpetrated upon him through the instant suit for damages. *See Millard v. Lorain Investment Corp., supra*, 184 A.2d at 632.[17] In this jurisdiction, the measure of damages recoverable by one in appellant's position, i.e., the victim of deceit in the sale of property, is "the difference between the amount paid and the market value of the thing acquired." *Kraft v. Lowe*, 77 A.2d 554, 558 (D.C.1950); *see Horning v. Ferguson*, 52 A.2d 116, 119 (D.C.1947).[18]

■■■ The facts establish that appellant, as a member of SATA, purchased his condominium unit at the special insider price of fifty-six thousand three hundred dollars ($56,300). Within a year, he sold the property for eighty-five thousand dollars ($85,-

**15.** According to Dean Prosser, LAW OF TORTS, *supra*, § 110, at 731:

> Since the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise.... [T]here can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been ....

**16.** For this reason, recovery of so-called "special damages," which arise incidental to the contract and are caused directly by the fraud, does not conflict with the general principle that rescission and damages are mutually exclusive. *See Kent Homes, Inc. v. Frankel, supra*, 128 A.2d at 445–46.

**17.** "By treating the property as his own and affirming the contract through continued performance," therefore, appellant is precluded from recovering the incidental "special" damages prayed for in his complaint. *See Millard v. Lorain Investment Corp., supra*, 184 A.2d at 632. Among other items these precluded special damages include: advertising costs, legal fees associated with the subsequent sale of the unit, the value of appellant's lost time, lost appreciation on a condominium unit which appellant asserts he would have purchased but could not purchase, and the increased cost of financing a new condominium unit.

**18.** This measure of damages is known as the "out of pocket" rule, *see Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Systems, Inc.*, 665 F.2d 1066, 1071 n. 16 (D.C.Cir.1981) (per curiam), as opposed to the "loss of the bargain" rule. *See Horning v. Ferguson, supra*, 52 A.2d at 119. Appellant's contention that the latter measure should apply to this claim is unfounded. The out of pocket rule is explicitly recognized as the norm in this jurisdiction, subject only to exception in rare cases where necessary to effect justice. *See Spargnapani v. Wright*, 110 A.2d 82, 85 (D.C. 1954); *accord Beardmore v. T.D. Burgess Co.*, 245 Md. 387, 392, 226 A.2d 329, 332 (1967). The additional cases cited by appellant to support his contention are inapposite to the facts before us. *Cf. Dravillas v. Vega*, 294 A.2d 363 (D.C.1972) (breach of lease agreement); *Espaillat v. Berlitz Schools of Languages of America, Inc.*, 127 U.S.App.D.C. 293, 383 F.2d 220 (1967) (personal services contract).

Moreover, appellant fails to demonstrate sufficient reasons to apply the loss of the bargain rule in this case. He concedes in his brief that, from the start, his purchase of the condominium unit was speculative—his intention being to resell it promptly for a more lucrative, non-residential use. Appellant accordingly places himself without the scope of his cited rationale for applying this more lenient measure of damages. *See United States v. Ben Grunstein & Sons Co.*, 137 F.Supp. 197, 209 (D.N.J.1955).

000). Arithmetically indisputable is the conclusion that appellant paid approximately twenty-eight thousand seven hundred dollars ($28,700) less for the property than he received for it in its subsequent sale. Accordingly, because appellant suffered no compensable damage as a result of appellees' asserted fraud,[19] the trial court was correct in entering summary judgment for appellees.

*Affirmed.*

19. Without proof of actual damages, appellant's claim for punitive damages was properly denied. *See Bay General Industries, Inc. v. Johnson,* 418 A.2d 1050, 1058 n. 21 (D.C.1980).