Richard W. SAGE, Plaintiff,

v.

BROADCASTING PUBLICATIONS,
INC., and Kirlin Enterprises,
Inc., Defendants.

Civil Action No. 86–1362 SSH.

United States District Court,
District of Columbia.

March 10, 1998.

**50**

Richard W. Sage, New York City, plaintiff pro se.

Leslie Angus Nicholson, Jr., Shaw, Pittman, Potts & Trowbridge, Washington, DC, Ralph Arthur Simons, Keller & Heckman, Washington, DC, for Defendants.

### OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion for summary judgment, plaintiff's opposition thereto, and defendants' reply. Upon careful consideration of the entire record, defendants' motion for summary judgment is granted in part and denied in part. Although findings of fact and conclusions of law

are unnecessary in ruling on a summary judgment motion, the Court nonetheless sets forth its analysis. *See* Fed.R.Civ.P. 52(a).

### Background

In 1981, defendants Broadcasting Publications, Inc. ("Broadcasting"), and Kirlin Enterprises, Inc. ("Kirlin"), along with five other companies (collectively, the "equipment lessors"), invested in petroleum services equipment. The companies leased the equipment to OTI, Inc. ("OTI"), a Texas corporation engaged in the inspection of oilfield tubular and pipeline products.

In late 1982, OTI began to experience financial difficulties. By early 1993, OTI was delinquent on its monthly equipment lease payments. The equipment lessors appointed Broadcasting as their agent with regard to their dealings with OTI.

Plaintiff purchased OTI in February 1984. OTI's business continued to decline. By the fall of 1984, OTI was behind in lease payments to the equipment lessors, in its medical insurance premium payments, and in its payment of local and state property taxes in addition to federal taxes.

On January 24 and 25, 1985, plaintiff met with Broadcasting to determine what course of action would be in the best interest of OTI and the equipment lessors. Prior to the execution of any written agreement, plaintiff requested that Broadcasting reimburse him for expenses he had incurred while running OTI. On January 25, 1985, plaintiff and Broadcasting executed a written agreement (the "1985 Agreement"). Under the 1985 Agreement, plaintiff agreed to assist Broadcasting in exercising the equipment lessors' rights under certain security documents, including possibly winding down OTI.[1] In exchange, Broadcasting agreed to pay a number of things, including plaintiff's monthly $6,000 salary, a $36,000 severance pay if plaintiff were dismissed for any reason other than good cause, OTI's liability for certain federal withholding taxes, and plaintiff's personal liability on an insurance policy purchased by OTI for the personal property in

---

1. The security documents are financial documents, executed in February 1984, which were intended to give the equipment lessors a security interest in all of OTI's real and personal property.

its custody and control. No discussion of plaintiff's oral agreement for reimbursement of personal expenses appears in the written contract. The 1985 Agreement also contains a merger clause that expressly precludes any prior agreements.

In February 1985, Broadcasting sent three representatives to OTI's headquarters in New Mexico to review OTI's affairs. During their visit, the representatives discovered a number of facts that defendants allege plaintiff had failed to disclose prior to the execution of the 1985 Agreement, including OTI's state and local property tax arrearages and OTI's continued deduction of health insurance premiums from its employees' paychecks after cancellation of its health insurance policy.

While Broadcasting's representatives were still at OTI's headquarters, plaintiff approached OTI's client, Armco Steel Company ("Armco") in Ambridge, Pennsylvania. OTI had a lucrative contract with Armco that was up for renewal. Defendants contend that when Armco expressed concern about OTI's ability to perform the new contract, plaintiff made no attempt to negotiate on behalf of OTI; instead, he proposed that he would form a new company, Pennsylvania Tubular Inspections ("PTI"), that would replace OTI as the pipe inspector at Armco's Ambridge plant.[2]

Thereafter, Broadcasting informed plaintiff orally of its decision to rescind the 1985 Agreement because he had made fraudulent misrepresentations before execution of the agreement. On February 26, 1985, Broadcasting gave plaintiff written notice of rescission. Following the rescission, the equipment lessors acted to protect and foreclose upon their collateral.

On May 19, 1986, plaintiff filed suit alleging breach of the written 1985 contract (Count I) and breach of the alleged prior oral contract (Count II). Defendants filed a counterclaim for breach of the 1985 written contract (Count I), fraud/negligent misrepre-

sentation of OTI's status (Count II), and intentional interference with the business expectancy concerning Armco (Count III). Defendants seek summary judgment on both counts of plaintiff's complaint and on counts II and III of their counterclaim on the grounds that (1) they did not breach a written contract, (2) plaintiff made fraudulent misrepresentations in the inducement of a contract, (3) they did not breach an oral contract, and (4) plaintiff intentionally interfered with a business expectancy.

### *Standard of Review*

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, all evidence and inferences must be viewed in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### *Discussion*

#### I. *Breach of the Written Contract*

Count I of plaintiff's complaint and Count I of defendants' counterclaim allege breach of the written contract. Defendants, in Count II of their counterclaim, assert that they did not breach the written agreement because plaintiff's fraudulent and negligent misrepresentations allowed them lawfully to rescind it.

. Under District of Columbia law, a party may rescind a contract that has been induced by fraud or misrepresentation.[3]

---

**2.** Plaintiff's failure to negotiate on behalf of OTI harmed defendants because a May 9, 1984, agreement between plaintiff and defendants gave the equipment lessors a specific security interest in all of OTI's present and future accounts re-

ceivable. *See* Security Agreement, dated May 9, 1984, Defendants' Ex. 26; *see also* Ex. 4, Nos. 9, 10; Sage dep., Ex. 15 at 331–33.

**3.** The parties agree that under a choice of laws analysis, the District of Columbia is the jurisdic-

*Goldman v. Bequai,* 19 F.3d 666, 672 (D.C.Cir.1994). Mutual assent or agreement is an essential element of a contract and a party has the right to rescind a contract "by showing that assent was obtained by fraud or even by misrepresentation falling short of fraud," *Hollywood Credit Clothing Co. v. Gibson,* 188 A.2d 348, 349 (D.C.1963). Therefore, a central issue in this case is whether plaintiff induced the 1985 Agreement through fraudulent or negligent misrepresentations.

■ To establish a prima facie case of fraudulent misrepresentation, defendants must show that plaintiff made (1) a false representation, (2) in reference to a material fact, (3) with the knowledge of its falsity, (4) with the intent to deceive, and (5) that action was taken in reliance on that representation. *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.,* 465 A.2d 835, 839 (D.C.1983); *Remeikis v. Boss & Phelps, Inc.,* 419 A.2d 986, 988 (D.C.1980).

■ A false representation is "an assertion not in accord with the facts." Restatement (Second) of Contracts § 159 (1971). The concealment of a fact that should have been disclosed is also a misrepresentation. *Feltman v. Sarbov,* 366 A.2d 137, 140–41 (D.C.1976). Where a court finds that a party had the duty to disclose material information, and failed to do so, there is an even greater likelihood that the nondisclosure will constitute fraud. *Pyne v. Jamaica Nutrition Holdings, Ltd.,* 497 A.2d 118, 131 (D.C.1985); *see also Remeikis,* 419 A.2d at 989 (holding that defendants' failure to disclose their knowledge that their home had termites was a false representation). Here, defendants allege that plaintiff misrepresented or concealed many material facts throughout the negotiation of the 1985 Agreement. Thus, they contend they lawfully rescinded the contract on the basis of fraud. Plaintiff contends that defendants mischaracterize the alleged false representations.

Defendants allege that plaintiff failed to disclose material facts relating to OTI's con-

tinued viability. First, they contend that plaintiff failed to mention that OTI owed $90,000 in unpaid personal property taxes to state and local governments. Plaintiff contends that defendants' allegation is wrong because at one point they asserted that the amount in arrears was only $80,000. Plaintiff also contends that defendants could have negotiated a settlement for substantially less than the amount owed. Whether the amount was $80,000 or $90,000, however, is not a material fact. Similarly, whether the amount could have been negotiated downward is not of consequence. Plaintiff concedes that he did not inform the defendants that OTI was in arrears for state taxes before executing the 1985 Agreement. Sage Deposition at 363 (Ex. 15 to Defs.' Mot. for Summ. J.). This nondisclosure is a sufficient basis for defendants to rescind the contract.

Second, defendants allege that plaintiff failed to disclose that OTI had deducted medical insurance premiums from its employees' paychecks after its policy had been canceled for nonpayment of premiums. Defendants further assert that plaintiff purposefully concealed this fact from the employees and defendants by instructing an OTI employee not to tell other employees that they were no longer insured. Plaintiff does not dispute these facts. He simply alleges that he obtained new insurance, after the execution of the 1985 agreement, with a retroactive plan. Even if plaintiff's assertion is true, however, it does not alter the fact that he let the OTI employees' medical insurance lapse, that the employees continued to have deductions taken from their paychecks for non-existent insurance, and that he failed to advise defendants of these circumstances. Whether or not plaintiff ultimately corrected the situation by finding a new insurance plan with retroactive coverage is not relevant. Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 587.

■ Plaintiff's failure to disclose these facts to defendants before executing the 1985

tion with the "most significant relationship" to the matters at issue in this case. *Hitchcock v.*

*United States,* 665 F.2d 354, 361 (D.C.Cir.1981).

Agreement thus constitutes fraudulent misrepresentation and, therefore, permits defendants to rescind the contract.[4] Accordingly, the Court concludes that defendants lawfully rescinded the 1985 written agreement due to fraud and grants summary judgment to defendants on Count I of plaintiff's complaint and Counts I and II of defendants' counterclaim.

## II. *Special Damages*

In Count I of their counterclaim, defendants contend that they are entitled to special damages as a result of plaintiff's fraudulent misrepresentations. Under District of Columbia law, a party who discovers that a material misrepresentation has been made in the execution of a contract may choose one of two remedies. *Dresser*, 465 A.2d at 840. The party may either affirm the contract and sue for damages or repudiate the contract and recover special damages. *Id.* Special damages are given to compensate the defrauded party for those expenditures made in reliance upon the misrepresentation. *Kent Homes, Inc. v. Frankel*, 128 A.2d 444, 446 (D.C.1957). Here, because the Court grants summary judgment on Count I of plaintiff's complaint and on Count II of defendants' counterclaim to defendants on the ground that plaintiff made fraudulent misrepresentations upon which the 1985 Agreement was executed, defendants are entitled to special damages.

Defendants claim they paid plaintiff a sum of $3,000 as a salary payment for the first half of February, pursuant to the 1985 Agreement. Defendants also claim they paid approximately $70,000 to satisfy plaintiff's personal liability to the insurance company that had insured OTI's personal property, pursuant to paragraph 7 of the 1985 Agreement.

Plaintiff, on the other hand, asserts that the $3,000 paid to plaintiff was not a salary payment. Plaintiff asserts, without support, that it was a payment from OTI to plaintiff that was made in the ordinary course of business, rather than pursuant to the 1985 Agreement. In making this assertion, however, plaintiff has failed to set forth specific facts showing there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248. A mere denial of the facts alleged in a properly supported motion for summary judgment is not enough to meet the non-moving party's burden. *See id.* Conclusory allegations made in affidavits opposing a motion for summary judgment are insufficient to create a genuine issue of material fact. *See Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114, 1126 (N.D.Ill.1995). This assertion also contradicts plaintiff's earlier statement in his reply to defendants' counterclaims that the $3,000 was payment in accordance with the 1985 Agreement. *See* Plaintiff's reply to counterclaims, Defendants' Ex. 3, ¶ 13 at 6. The Court is not required to consider contradictory factual allegations made in opposition to a motion for summary judgment when ruling upon a motion for summary judgment.

Defendants, however, have failed to meet their burden of proof with regard to the $70,000 payment. They have set forth no evidence supporting the fact that the payment was actually made and have failed to allege the payment of a specific amount of money, referring to the payment as "approximately $70,000." Although plaintiff has not set forth any evidence showing that the payment was not made, "the party opposing the motion for summary judgment bears the burden of responding only after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Celotex*, 477 U.S. at 322. Accordingly, the Court awards defendants $3,000 in special damages and grants defendants until March 31, 1998, to file evidence supporting the alleged $70,000 payment. Thereafter, plaintiff shall have until April 17, 1998, to oppose the evidence defendants set forth and defendants shall have until April 27, 1998, to reply to plaintiff's opposition.

## III. *Breach of Oral Contract*

In Count II of his complaint, plaintiff alleges that defendants breached the alleged oral

---

4. Defendants allege other false representations. *See* Feb. 26, 1985, letter, Defendants' Ex. 38. However, because the misrepresentations discussed above are sufficient to establish a prima facie case of fraudulent misrepresentation, the Court need not address those other instances.

contract by failing to reimburse him for certain expenditures he had made, including $7,500 for a crane rental. Defendants claim that the merger clause in the 1985 Agreement bars any claim for breach of an oral contract formed before the signing of the written contract.

■ Neither party in this case disputes that the written contract was signed after the oral agreement was made or that the written contract contains a merger clause. Ordinarily a case such as this would be decided easily because the law clearly provides that "where there are two contracts involved, one a verbal contract and another a written contract . . . the written contract being subsequent to the verbal contract, the written contract prevails." *Levinson v. Evening Star Newspaper Co.*, 138 F.Supp. 947, 950 (D.D.C.1955).

Defendants assert, however, that they lawfully rescinded the written contract because plaintiff induced its execution through fraudulent misrepresentation. This Court agrees, and, as noted, does grant summary judgment to defendants on that issue. Defendants now claim that the written contract they rescinded is valid for purposes of the merger clause. The parties do not address the issue of whether the merger clause remains valid after the remainder of the contract has been rescinded.[5] Accordingly, the Court reserves its ruling on summary judgment on Count II of plaintiff's complaint, pending receipt of supplemental memoranda from the parties on this narrow issue.[6]

## IV. *Intentional Interference With a Business Expectancy*

Count III of defendants' counterclaim alleges that plaintiff intentionally interfered with defendants' business expectancy by attempting to obtain a contract with Armco in February 1985. As mentioned above, throughout 1984, OTI had a lucrative contract with Armco. When OTI's letter agreement with Armco expired, Armco sought bids for a new contract from OTI and other interested parties. Plaintiff traveled to Pennsylvania to meet with Armco. Rather than encourage Armco to renew its contract with OTI, however, plaintiff proposed that Armco award the current contract to PTI, a new company formed by plaintiff.

■ To prevail in a case for intentional interference with a business expectancy under District of Columbia law, the claimant must show (1) that the opposing party intentionally interfered with business opportunities, and (2) that there was resulting damage. *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986) (quoting *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 289 (D.C.1977)).

■ The Court concludes that the first element of the tort—intentional interference—is met because plaintiff knew that OTI was bidding for the Armco contract, yet went to Pennsylvania, ostensibly on behalf of OTI, to try to obtain the contract for a company he had just formed. Plaintiff claims that he proposed the formation of PTI "to protect the integrity of OTI." Plaintiff, however, provides no support for this statement. He went to Pennsylvania to negotiate with Armco without informing any of the equipment lessors of his plans to form PTI. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *see also Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir.1980) (holding that plaintiff must present significant probative evidence relevant to the issue of intent in opposing a motion for summary judgment).

■ The Court concludes, however, that plaintiff has presented enough evidence to raise a genuine issue of material fact with respect to the second element of the tort—

---

**5.** The Court notes that a party may manifest an intent to depart from all prior agreements through the formulation of a merger clause, even if the final contract containing the merger clause is unenforceable. *See* Restatement (Second) of Contracts § 275 (1971).

**6.** The parties should submit supplemental memoranda in accordance with the aforementioned briefing schedule for special damages.

damages. Defendants contend that plaintiff's interference precluded any possibility that OTI could retain the account with Armco. Plaintiff, however, contends that Armco had three problems, all involving delays, with OTI's service, and that another employee of OTI, not plaintiff, had informed Armco that OTI was shutting down. Plaintiff contends, therefore, that these independent factors, rather than his actions, are what caused Armco to award the contract to another company (Baker Oil Tools) instead of to OTI. Accordingly, the narrow issue of whether defendants suffered damages as a result of plaintiff's interference is left to the trier of fact. Accordingly, the Court denies defendants' motion for summary judgment on Count III of their counterclaim.

## Conclusion

For the reasons stated, the Court grants in part and denies in part defendants' motion for summary judgment. The Court concludes that a genuine issue of material fact may exist with regard to plaintiff's claim for breach of an oral contract. Therefore, the Court is reserving its ruling on Count II of plaintiff's complaint pending further briefing by the parties.

The Court also concludes that a genuine issues of material fact exists as to whether plaintiff's intentional interference with defendants' business expectancy resulted in damages. Thus, the Court denies defendants' motion for summary judgment on Count III of defendants' counterclaim.

Additionally, the Court concludes that no genuine issue of material fact exists with regard to plaintiff's claim for breach of contract, defendants' counterclaim of fraud, and defendants' request for special damages. Accordingly, the Court grants defendants' motion for summary judgment on Count I of plaintiff's complaint and Counts I and II of defendants' counterclaim. An appropriate Order accompanies this Opinion.

## ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that the Court grants defendants' motion for summary judgment on Count I of plaintiff's complaint. It hereby further is

ORDERED, that the Court grants summary judgment on Counts I and II of defendants' counterclaim and awards defendants $3,000 in special damages. Additionally, the Court directs defendants to file evidence supporting the alleged $70,000 payment in accordance with the schedule set forth below. It hereby further is

ORDERED, that the Court defers judgment on defendants' motion for summary judgment on Count II of plaintiff's complaint pending further briefing in accordance with the schedule set forth below. It hereby further is

ORDERED, that the Court denies defendants' motion for summary judgment on Count III of defendants' counterclaim. It hereby further is

ORDERED, that defendants shall file evidence of the alleged $70,000 payment and a supplemental memorandum on the narrow issue of whether a merger clause remains valid even after the remainder of a contract has been rescinded on or before March 31, 1998. It hereby further is

ORDERED, that plaintiff shall file a response, if any, to defendants' evidence and supplemental memorandum on or before April 17, 1998. It hereby further is

ORDERED, that defendants shall file a reply to plaintiff's submission, if any, on or before April 27, 1998.

SO ORDERED.