NEBEKER, Senior Judge,
concurring in part and dissenting in part:
I would affirm the judgment and not reform the litigation into an action not contemplated by the parties or the trial court. While I join the majority opinion as to count II, I respectfully dissent from my colleagues’ decision to remand counts III, IV, V, and VI. I believe a remand is unnecessary, because the, Stancils failed to state a claim for fraudulent misrepresentation or breach of an oral contract, and it would- be futile to afford them a second opportunity to do so. The majority seems to, believe that, >by allowing the Stancils-a second try at pleading their case, it is serving broader, undefined principles of equity. But the Stancils did not ask the trial court for leave to amend, nor did they ask this court for a remand to allow such amendm’ent. The majority goes out of its way to relieve the Stancils of their failure — relief for which they have not asked. In doing so, it effectively sacrifices this court’s role as a neutral arbiter on the altar of the ever-variable concept of fairness. What the Stancils deem fair surely is not so viewed by FMV, which will now have the additional burden and expense of further litigation imposed by this court. In sum, the majority licenses the Stancils to recast their failed attempt to state a, cognizable claim; an approach incompatible with efficient judicial administration: , ,
*876 In our jurisprudential system, trial and appellate processes are synchronized in contemplation that review will normally be confined to matters appropriately submitted for determination in the court of first resort. Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party’s thesis, will normally be spurned on appeal. Canons of this tenor reflect, not obeisance to ritual, but considerations of fairness to the court and the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact. The injunction that trial ventilation precede appellate exploration best subserves that policy without appreciable imposition upon the litigants. It requires them to deal fairly and frankly with each other and with the trial tribunal with respect to their controversies. It prevents the trial of cases piecemeal or in installment. It tends to put an end to litigation. We think that sound judicial administration embraces importantly the elimination of expenditures of time and energy — by parties as well as courts — incidental to potentially unnecessary appeals.
Miller v. Avirom, 127 U.S.App.D.C. 367, 369-70, 384 F.2d 319, 321-22 (1967) (footnotes and internal quotation marks omitted).
In their complaint, the Stancils failed to plead fraud with the requisite particularity, as they did not allege any detrimental reliance on FMV’s alleged misrepresentations. To make out a fraudulent-misrepresentation claim, a plaintiff must allege, among other things, “ ‘reliance ... which consequently resulted in provable damages.’” Railan v. Katyal, 766 A.2d 998, 1009 (D.C.2001) (quoting Dresser v. Sunderland Apartments Tenants Ass’n, Inc., 465 A.2d 835, 839 (D.C.1983)); accord Kitt v. Capital Concerts, Inc., 742 A.2d 856, 861 (D.C.1999) (“[T]he plaintiff must show that ‘provable damages’ resulted from the fraud.” (quoting Dresser, supra)). The Stancils alleged, in conclusory fashion, that they relied on FMV’s alleged misrepresentations, but failed to specify what that reliance entailed. Accordingly, they failed to plead adequately their fraud claims. See Atraqchi v. GUMC Unified Billing Servs., 788 A.2d 559, 563 (D.C.2002) (“ ‘Fraud is never presumed and must be particularly pleaded.’ ” (quoting Bennett v. Kiggins, 377 A.2d 57, 59-60 (D.C.1977))).
Remand is unnecessary because the Stancils cannot cure this deficiency. Although “leave to amend is almost always allowed to cure deficiencies in pleading fraud,” Washkoviak v. Student Loan Mktg. Ass’n, 849 A.2d 37, 39 (D.C.2004), a court is not required to grant leave to amend when the plaintiff will not be able to repair its defective pleading. See, e.g., United States ex rel. Raynor v. National Rural Utils. Coop. Fin., Corp., 690 F.3d 951, 958 (8th Cir.2012) (“[Fjutility constitutes a valid reason for denial of a motion to amend.” (quoting Knapp v. Hanson, 183 F.3d 786, 790 (8th Cir.1999))); Hadley v. BNC Mortg., Inc., 466 Fed.Appx. 612, 613 (9th Cir.2012) (“The district court did not abuse its discretion by dismissing without leave to amend where amendment would be futile.”); In re Interbank Funding Corp. Sec. Litig., 393 U.S.App.D.C. 415, 420, 629 F.3d 213, 218 (2010) (“[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.”); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1300 (3d ed. 2013) (“Leave to replead will be denied, however, when the district court believes that it would be futile ....”); cf. Floyd v. Bank of Am., 70 A.3d 246 (D.C.2013) (af *877 firming trial court’s dismissal of complaint on the alternative ground that plaintiffs failed to state a legally-cognizable claim, even though the trial court dismissed for lack of standing and never reached that issue). And here, granting leave to amend would be an exercise in futility, as the Stancils cannot allege they detrimentally relied on FMVs misrepresentations.
Specifically, the Stancils alleged that FMV made two misrepresentations: (1) that, in exchange for $50,000, it would not foreclose on their investment property; and (2) that it would reduce this agreement to writing. But the Stancils cannot claim they suffered any detriment as a result of either misrepresentation, as neither left them in a worse position than they would have been had FMV done nothing at all. See Black’s Law DictionaRY 1404 (9th ed. 2009) (defining “detrimental reliance” as “[r]eliance by one party on the acts or representations of another, causing a worsening of the first party’s position”). First, that they ultimately faced foreclosure cannot be a legal detriment, as FMV had a right to foreclose before it made any representation. Thus, FMV’s alleged promise left them in no worse position than when they started. Nor can the Stancils claim detrimental reliance based on their $50,000 payment. The performance of an obligation already owed is not a legal detriment. See, e.g. Conrad v. Bank of Am., 45 Cal.App.4th 133, 53 Cal.Rptr.2d 336, 352 (1996) (holding that plaintiffs’ execution of a new assignment-of-proceeds agreement — in reliance on Bank’s alleged promise to lend additional money — was not detrimental because “the Bank’s existing security agreement and assignment of proceeds entitled the Bank to the proceeds of [the sale] so long as it was owed money by [the plaintiffs]”). Under the note’s terms, the Stancils owed FMV $500,000 — which their default rendered immediately due. Accordingly, their payment was nothing more than partial performance of their preexisting contractual duties. This, in itself, is not a legal detriment.
For a similar reason, the Stancils cannot make out a valid breach-of-contract claim. In the absence of a qualifying writing, the Statute of Frauds leaves real-property agreements unenforceable. Mark Keshishian & Sons, Inc. v. Washington Square, Inc., 414 A.2d 834, 840 (D.C.1980). We have recognized an estoppel exception to the Statute “where [the defendant’s] own fraud was responsible for the non-existence of the required signed memorandum.” Rallan, supra, 766 A.2d at 1007-08 (quoting Hackney v. Morelite Constr., 418 A.2d 1062, 1066 (D.C.1980)). But the Stancils do not qualify for this exception because, as just discussed, they cannot allege that FMV committed fraud.
Accordingly, rather than remand, I would affirm the trial court’s order on all counts.